ADAM L. BRAVERMAN
United States Attorney
AARON P. ARNZEN (CA Bar No. 218272)
ANDREW J. GALVIN (CA Bar No. 261925)
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8384 / 9721
Email: Aaron.Arnzen@usdoj.gov / Andrew.Galvin@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GANNON GIGUIERE,<br>OLIVER-BARRET LINDSAY,<br>ANDREW HACKETT,<br>KEVIN GILLESPIE, and<br>ANNETTA BUDHU,<br><br>　　　　Defendants. | Case No. 18CV1530-WQH-JLB<br><br>**UNITED STATES' MOTIONS TO:**<br><br>　(1) **INTERVENE; and**<br>　(2) **STAY PROCEEDINGS**<br><br>Date: TBD<br>Time: TBD<br>Court: 13B (Carter/Keep)<br>Judge: Hon. William Q. Hayes |

COMES NOW the Plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Adam L. Braverman, United States Attorney, and Aaron P. Arnzen and Andrew J. Galvin, Assistant United States Attorneys, and hereby submits its motions to intervene and stay the proceedings in the above-captioned civil case (the "SEC Case") pending resolution of the parallel criminal cases docketed at <u>United States v. Giguiere, et al.</u>, 18CR3071-WQH, and *United States v. Hackett, et al.*, 18CR3072-BTM (the "Criminal Cases").

Plaintiff Securities and Exchange Commission ("SEC") does not oppose the motions; Defendant Andrew Hackett's counsel has indicated he intends to join the motions; Defendant Budhu's counsel has not yet taken a position with respect to the

motions; and counsel for Defendants Giguiere, Lindsay, and Gillespie have indicated they will oppose the motions. (Only counsel for Defendant Giguiere have filed a notice of appearance in the SEC Case.)

# POINTS AND AUTHORITIES

## I.

## INTRODUCTION

The SEC complaint and indictments in the Criminal Cases focus on the same pump-and-dump securities fraud schemes, allege that these schemes were carried out by the same individuals, and are based on the same evidence and witnesses. Given the almost complete factual overlap, the Court should stay the SEC Case pending the outcome of the Criminal Cases.

**First**, proceeding with the SEC Case would force Defendants to choose between setting aside their Fifth Amendment rights, on the one hand, or invoking those rights but then suffering the adverse evidentiary inference such silence often carries in civil litigation. **Second**, discovery in the SEC case would likely turn into an unfair, one-sided affair - if Defendants invoke their Fifth Amendment rights (Defendant Giguiere has already done so in his answer to the SEC's complaint), they could take affirmative civil discovery but stand silent when the SEC sought answers from them about the their conduct. **Third**, without a stay, Defendants could avoid the limitations on criminal discovery by using the SEC Case to pursue wide-ranging discovery through, e.g., depositions, interrogatories, and third party subpoenas. **Fourth**, the SEC Case and Criminal Cases overlap almost entirely in terms of charged conduct, defendants (two additional defendants are charged in the Criminal Cases but not in the SEC Case), witnesses, and evidence; the cases therefore cannot realistically proceed independent of one another. **Finally,** staying the SEC Case (which seeks injunctions and financial relief) and allowing the Criminal Cases (in which liberty interests are at stake) to proceed will

therefore save the Court, and the parties, significant resources, while allowing for a full vetting of the allegations against Defendants.

## II.
## STATEMENT OF FACTS

**A.     The Civil Case**

The SEC Case arises out of a parallel investigation by the SEC and FBI of three fraudulent market manipulation / pump-and-dump schemes.

The SEC's complaint alleges that Defendants Gannon Giguiere and Oliver Lindsay engaged in a scheme to pump-and-dump the stock of Kelvin Medical, Corp (ticker: "KVMD") from at least as early as 2017 through early 2018.  Docket No. 1, ¶¶ 35-65.  In furtherance of the scheme, Giguiere and/or Lindsay caused KVMD to issue false and misleading statements to the investing public; made false statements to a brokerage firm; engaged in illegal "match trades" between brokerage accounts controlled by Giguiere and Lindsay; pumped up the price and volume of the stock by promoting KVMD on the stock promotion website at TheMoneyStreet.com (which Giguiere controlled); and agreed to sell the KVMD shares after they artificially inflated the share price to a certain level.  Id.  Giguiere and Lindsay both attempted to coordinate their efforts through CHS, who, unbeknownst to them, was an FBI source.  Id., ¶ 6.

The SEC's complaint also alleges that Giguiere engaged in another pump-and-dump scheme surrounding the stock of Eco Science Solutions, Inc. (Ticker: "ESSI"). (The SEC complaint does not allege that Lindsay participated in the ESSI fraud.)  As part of this scheme, Giguiere obtained ESSI stock at a substantial discount; pumped up the price and volume of the stock through promotions on TheMoneyStreet.com; and dumped the shares into the market after he artificially inflated the stock price.  Id., ¶¶ 109 - 141.

The SEC's complaint separately alleges that Defendants Andrew Hackett, Kevin Gillespie and Annetta Budhu engaged in yet another pump-and-dump scheme, this one involving the stock of Arias Intel, Corp (Ticker: "ASNT") from at least as early as 2017

through early 2018. Id., ¶¶ 10 - 16. They did so by transferring ASNT shares to Hackett at a drastic discount; making misrepresentations to a brokerage firm in order to deposit the stock; arranging to pump up the stock price and volume through promotions on TheMoneyStreet.com; relaying confidential, inside information about ASNT to the co-conspirators in order to coordinate press releases with efforts to pump the stock; and agreeing to dump their ASNT shares after they manipulated the stock price up to a certain level. Id., ¶¶ 66-93. In addition, after acquiring the ASNT shares, Hackett sold some of them through illegal match trades after paying commissions of over 30% to the buyer. Id., ¶¶ 94-108. Like Defendants in the KVMD scheme, Hackett, Budhu and Gillespie attempted to coordinate these efforts through CHS, the FBI source.

Based on the foregoing, the SEC alleges that all Defendants violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder. Id., ¶¶ 142-150.

**B.    The Criminal Cases**

A Grand Jury sitting in this District handed down two indictments in June 2018 that, in combination, overlap almost entirely with the SEC's civil case.

In United States v. Giguiere, et al., 18CR3071-WQH, Giguiere and Lindsay conspired to pump-and-dump the stock of KVMD from 2017 through early 2018. They are alleged to have done so by the same means described in the SEC complaint. More specifically, it was part of the conspiracy that Giguiere and Lindsay would acquire KVMD shares; conceal the extent of their affiliation with and control over KVMD and its stock; make misrepresentations to their brokerage firm in connection with stock deposits; engage in illegal match trades of KVMD stock; cause KVMD to make misleading statements to the public about the company; promote the stock on TheMoneyStreet.com; and sell the stock into the open market after artificially inflating the stock price. See 18CR3071-WQH, Docket No. 1, ¶¶ 9-20.

The same indictment charges Giguiere with conspiring to pump-and-dump ESSI stock from early 2016 through early 2017. It was part of the conspiracy to obtain control

over significant blocks of ESSI stock; make misrepresentations to facilitate stock deposits with brokers; pump up ESSI's stock price and volume through promotions on TheMoneyStreet.com; and dump their ESSI stock after artificially inflating its stock price. Id., ¶¶ 27-34.

Giguiere and Lindsay are charged with an 18 USC § 371 conspiracy to commit securities fraud, and a substantive count of securities fraud pursuant to Section 10(b) and Rule 10b-5 thereunder for the KVMD scheme, and Giguiere was charged with the same crimes in additional counts for the ESSI scheme.

In United States v. Hackett, et al., 18CR3072-BTM, Hackett, Budhu and Gillespie (all of whom are defendants in the SEC Case) were indicted for conspiring (along with two other individuals, Kuldeep Sidhu and Vikram Khanna) to pump-and-dump ASNT stock. These Defendants also are alleged to have used the same means to defraud as those described in the SEC complaint. In other words, it was part of the conspiracy to obtain significant blocks of free-trading ASNT shares; make misrepresentations to obtain and deposit those shares; pump up the stock's price and volume through promotions on TheMoneyStreet.com; engage in manipulative trading to support the stock price; share previews of inside information to coordinate with the pump; and sell ASNT shares while the stock price was artificially inflated. See 18CR3072-BTM, Docket No. 1, ¶¶ 11-23. Hackett, Budhu and Gillespie are charged with an 18 USC § 371 conspiracy to commit securities fraud, and a substantive count of securities fraud pursuant to Section 10(b) and Rule 10b-5 thereunder.

## II.

## ARGUMENT

### A. Intervention Is Appropriate Under Federal Rule of Civil Procedure 24

Under Federal Rule of Civil Procedure 24(a)(2), anyone may intervene in a case as of right in an action when the applicant "claims an interest relating to the . . . transaction which is the subject of the action" and "disposition of the action may as a practical matter

impair or impede the applicant's ability to protect that interest, unless existing parties adequately protect that interest." Alternatively, intervention may be permitted by the Court under Federal Rule of Civil Procedure 24(b)(2) "when the applicant's claim or defense and the main action have a question of law or fact in common." Whatever the basis, "[i]t is well established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding which is anticipated or already underway that involved common questions of law or fact." Bureerong v. Uvawas, 167 F.R.D. 83, 86 (C.D. Cal. 1996) (quoting SEC v. Mersky, No. 93-5200, 1994 U.S. Dist. LEXIS 519 *2-3 (E.D. Pa. Jan. 25, 1994)); see also SEC v. Dresser Indus., Inc., 628 F.2d 1368, 1376 (D.C. Cir. 1980).

Either provision of Rule 24 supports intervention here. Under Rule 24(a)(2), the United States does, by this motion, claim an interest relating to civil discovery in the above-captioned case. In particular, the United States' interests include the need to prevent premature exposure of sensitive investigative information through the civil discovery process—an interest that the United States is uniquely positioned to protect. Similarly, under Rule 24(b)(2), intervention is appropriate because the SEC Case and the Criminal Cases raise the same or very similar factual and legal questions.

Accordingly, this Court should grant the United States' motion to intervene.

**B.      This Court Should Stay the Above-Captioned Case in the Interests of Justice**

This Court has the inherent power to stay any action when "the interests of justice seem to require such action." Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995); Landis v. North Am. Co., 299 U.S. 248, 254 (1936). The determination whether to stay a civil proceeding turns on context, and should be reached "in light of the particular circumstances and competing interests" implicated by a given case. Keating, 45 F.3d at 324 (internal quotations and citations omitted). The Court should consider the "extent to which the defendant's [F]ifth [A]mendment rights are implicated," id. (internal quotations omitted), as well as the following factors:

(1) The interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons or entities not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

Id. at 325.

These factors weigh strongly in favor of a stay.

### 1. The Interests of the Parties Support a Stay of the SEC Case

Civil discovery would burden both the SEC and all Defendants in the SEC Case. For example, the SEC's discovery demands would force Defendants into a Hobson's choice. Defendants could invoke their rights under the Fifth Amendment, but would suffer potentially severe consequences – a negative inference can (and often does) attach to silence in civil proceedings. See, e.g., S.E.C. v. Colello, 139 F.3d 674, 677 (9th Cir. 1998) (affirming summary judgment in civil case based largely on defendant's invocation of his Fifth Amendment rights, even when result "may seem harsh"; citing Baxter v. Palmigiano, 425 U.S. 308, 318 (1976); United States v. Solano–Godines, 120 F.3d 957, 962 (9th Cir. 1997)). To avoid an adverse inference in the civil case, Defendants would have to answer questions about precisely the same conduct for which they stand criminally charged – a result that runs up against their Fifth Amendment rights against self-incrimination. Not staying the SEC case therefore would create substantial prejudice to the Defendants. (Defendants who oppose this motion will shrug off these concerns, likely because they hope to achieve an end-run around the limitations on criminal discovery, as discussed below.)

The SEC would suffer significant prejudice, too. This is because Defendants could take advantage of the full panoply of discovery available to them under the Federal Rules of Civil Procedure, including third party subpoenas, documents

requests, depositions (including expert depositions), and interrogatories. In fact, Magistrate Judge Burkhardt has already ordered the parties to the SEC case to file a joint discovery plan covering all aspects of civil discovery. (Docket #17.) At the same time, Defendants will almost undoubtedly resist the SEC's discovery demands by, <u>inter alia</u>, asserting their Fifth Amendment rights, something Defendant Giguiere has already done. (<u>See</u> Docket #12, Giguiere's Answer to the Complaint, at p. 1: "Mr. Giguiere hereby asserts his right under the Fifth Amendment to the Constitution of the United States and applicable laws and statutes not to be compelled to be a witness against himself…"). Defendants could therefore pursue a full range of civil discovery, but refrain from providing relevant, and even critical, information and materials to the SEC. Discovery, therefore, would fail to further the litigation in any real sense – one side (Defendants) could further their fact-finding interests, while the other side (the SEC) gets left in the dark.

**2. The Efficient Use of Judicial Resources Supports a Stay of the SEC Case**

There is no realistic possibility that the SEC case meaningfully proceeds through civil discovery before the conclusion of the criminal case. During civil discovery, each of the seven criminal defendants likely will be asked by the SEC (and by all five of the SEC Case defendants) about their involvement in the alleged market manipulation schemes. But if history and experience are any indication, most or all of these civil and criminal defendants will assert their Fifth Amendment rights. Without information from those individuals closest to, and with the most knowledge about, the charged schemes – information that is critical to the SEC Case – there is little point in allowing the SEC Case to go forward.

To make matters worse, the lack of a stay will require the Court's attention. Indeed, Judge Burkhardt has already ordered, among other things: (1) the

submission of early neutral evaluation statements by September 19, 2018; (2) an early neutral evaluation conference on September 28, 2018; (3) a case management conference on the same date, if no resolution is reached; (4) the submission of a joint discovery plan by September 19, 2018; (4) the submission of proposed civil protective orders by October 28, 2018; and (5) the completion of fact and expert discovery by March 28, 2019.  Presiding over these events would likely require substantial judicial resources, and disputes may well involve Magistrate Judge Burkhardt and the District Court.  See S.E.C. v. Nicholas, 569 F. Supp. 2d 1065, 1069 (C.D. Cal. 2008) ("Civil discovery will … require the devotion of substantial resources both by the parties, in reviewing documents, propounding and responding to discovery, and taking and defending depositions, and by the Court in resolving the myriad of disputes that are likely to arise.").  All the while, and despite such judicial efforts, the litigants will simply be waiting for the culmination of the criminal proceedings before they fully attend to the critical aspects of the SEC Case.

On the other hand, criminal cases can – and often do – progress all the way through conviction or acquittal without statements by Defendants.  And after conviction or acquittal, it is virtually unheard of for a civil trial to take place in a parallel SEC case.  There were no follow-on civil trials, for example, in the criminal and SEC cases brought in this District in connection with Peregrine System, Inc.'s accounting fraud.  There, ten individual civil defendants were named in the SEC case. (See SEC v. Gardner, et al., S.D. Cal. Case No. 04CV2002-JAH.)  All of these defendants, as well as additional defendants, were criminally charged. (See U.S. v. Gardner, et al., S.D. Cal. Case No. 04CR2605-W.)  The SEC case was stayed prior to discovery, and the criminal case proceeded to trial. (S.D. Cal. Case No. 04CV2002-JAH, Docket # 43).  Seven of the civil defendants eventually pleaded guilty in the criminal case, two had their charges

1 dismissed after hung juries, and the remaining defendant pleaded guilty to reduced charges. Despite these varied results, there was no civil trial as to any of the defendants in the SEC case. Instead, the parties to the SEC case resolved their cases, having sized up the evidence and witnesses in the criminal trials. Indeed, the quick resolution of SEC proceedings after (or even before) a criminal trial is the norm, mostly because a criminal conviction usually results in collateral estoppel, and an acquittal (or hung jury) forces the SEC to rethink its settlement position. E.g., Nicholas, 569 F.Supp.2d at 1070 ("[C]ollateral estoppel in the criminal case may expedite the resolution of the civil case."); SEC v. Offill, No. 07CV1643, 2008 U.S. Dist. LEXIS 28977, *10 (N.D. Tex. Apr. 9, 2008) ("Due to differences in the standards of proof between civil and criminal prosecutions, the possibility always exists for a collateral estoppel or res judicata effect on some or all of the overlapping issues.") (internal citations and quotations omitted).

Further, in the unlikely event a civil trial transpires, the parties could prepare for trial and try the SEC Case in relatively short order after the criminal proceedings terminate. See Trs. of Plummers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc., 886 F. Supp. 1134, 1140 (S.D.N.Y.) ("resolution of the Criminal Case may reduce the scope of discovery in the civil case and the evidence gathered during the criminal prosecution can later be used in the civil action").

In sum, staying the SEC case would allow the Court to focus on the Criminal Cases. After the Criminal Cases terminate, the civil case can proceed apace, or (as often happens) be resolved without the expenditure of significant judicial resources.

### 3. A Stay will Prevent Unfair Prejudice to the Government

A stay of the civil proceedings is appropriate to prevent Defendants in the Criminal Cases from taking unfair advantage of broad civil discovery rules in the SEC Case, and thereby avoid the restrictions that would otherwise pertain to them

as defendants in the Criminal Cases. "The specter of parties and witnesses invoking their Fifth Amendment rights would render civil discovery largely one-sided; the SEC would produce scores of documents and witness testimony only to be precluded from gathering reciprocal discovery from the Defendants." Nicholas, 569 F. Supp. 2d at 1070; see also Campbell v. Eastland, 307 F.2d 478, 488 (5th Cir. 1962) ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit.").

The Second Circuit, informed by its long history of presiding over multi-defendant parallel SEC and criminal cases, has also recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter." SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988). Indeed, the vastly different rules that apply to discovery in civil and criminal cases are important reasons for staying civil proceedings and discovery in cases where there are parallel criminal proceedings. See, e.g., Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6, 10 (D. Conn. 2002) ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and those of a defendant in a criminal case."); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1010 (E.D.N.Y. 1992) (granting stay, in part, because "[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules"); SEC v. Beacon Hill Asset Management LLC, 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in context of request for civil stay of discovery due to pending criminal investigation, "the principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse

civil discovery to circumvent limitations on discovery in criminal cases"); Phillip Morris Inc. v. Heinrich, 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (without stay, targets "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules").

Unlike in a civil case, criminal defendants ordinarily are not entitled to depose prosecution witnesses, much less engage in the type of far-ranging inquiry permitted by the civil rules. See, e.g., Fed. R. Civ. Proc. 15(a). Nor are they able to obtain documents reflecting prior statements of witnesses before trial. See 18 U.S.C. § 3500; Fed. R. Crim. Proc. 16(a).

Discovery in criminal cases is narrowly circumscribed for important reasons entirely independent of any generalized policy of restricting the flow of information to defendants. Indeed, the criminal discovery rules "are purposefully limited so as to prevent perjury and manufactured evidence, to protect potential witness from harassment and intimidation, and to level the playing field between the government and the defendant, who would be shielded from certain discovery by the Fifth Amendment." Nicholas, 569 F. Supp. 2d at 1071–72 (citing Campbell, 307 F.2d at 487 n.12); see also Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 381 (D.D.C. 1977).

These concerns are applicable here. Defendants' ability to take depositions, serve interrogatories, and issue third party subpoenas, for example, would undoubtedly provide them with information not otherwise discoverable in the criminal case, thus enhancing their ability to manufacture evidence or tailor testimony, and otherwise severely hamper the government's ability to conduct an orderly investigation and prosecution.

As the government will suffer irreparable prejudice if Defendants are permitted to obtain broad civil discovery prior to the conclusion of the criminal proceeding, the requested stay should be granted.

12

### 4. The Interest of the Public in the Pending Cases Support a Stay of the SEC Case.

Advancing the criminal case should take precedence over the SEC case, which seeks civil sanctions and professional bars, primarily because the criminal case implicates Defendants' liberty interests. "Staying the civil case, which carries only civil sanctions and monetary penalties, is not of an equally pressing nature." Nicholas, 569 F. Supp. 2d at 1073. Additionally, this case addresses abuses in the stock market – those abuses impact the integrity of the market as a whole, and chip away at the fundamental notion that all investors enjoy a level playing field. "The public has a vital interest in the integrity of public markets, efficient punishment of wrongdoers, and deterrence of similar conduct by other corporate officers." Nicholas, 569 F. Supp. 2d at 1072; see also United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution"); Ashworth v. Albers Med., Inc., 229 F.R.D. 527, 532 (S.D. W. Va. 2005); (interest in litigating civil case "pales in comparison to the public interest as a whole in unraveling the criminal ... scheme and punishing those responsible for that scheme."); Bureerong, 167 F.R.D. at 87 ("the interests of the Government in protecting its criminal investigation are clearly the paramount concern here"); Javier H. v. Garcia-Botello, 218 F.R.D. 72, 75 (W.D.N.Y. 2003) (stating that the "public's interest in the integrity of the criminal case is entitled to precedence over the civil litigant").

A stay is especially appropriate here because, as set forth above, there is an indictment filed against all five of the Defendants in the SEC Case for engaging in the same activities that are the subject of that lawsuit. The prosecution in this case

will therefore vindicate substantially the same public interest underlying the SEC's civil action, namely preventing corporate securities fraud.

## II

## CONCLUSION

For the foregoing reasons, the United States requests that this Court grant its motions to intervene and to stay the above-captioned proceedings pending resolution of the parallel criminal cases docketed at <u>United States v. Giguiere, et al.</u>, 18CR3071-WQH, and <u>United States v. Hackett, et al.</u>, 18CR3072-BTM.

DATED: August 21, 2018 　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　ADAM L. BRAVERMAN
　　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　　/s/Aaron P. Arnzen
　　　　　　　　　　　　　　　　　　　　　Aaron P. Arnzen
　　　　　　　　　　　　　　　　　　　　　Andrew J. Galvin
　　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>GANNON GIGUIERE,<br>OLIVER-BARRET LINDSAY,<br>ANDREW HACKETT,<br>KEVIN GILLESPIE, and<br>ANNETTA BUDHU,<br><br>　　　Defendants. | Case No. 18CV1530-WQH-JLB<br><br>CERTIFICATE OF SERVICE |

I, Aaron Arnzen, am a citizen of the United States and am at least 18 years of age. My business address is 880 Front Street, Room 6293, San Diego, California, 92101-8893. I am not a party to the above-entitled action.

I have caused service of the **UNITED STATES' MOTION TO INTERVENE AND STAY PROCEEDINGS,** on the parties to this case by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them, and by mailing and emailing the indictment to counsel for Defendants, as follows:

*Counsel to Defendant Gannon Giguiere*
Stephen Cook
Ashley Baynham
Brown Rudnick LLP
2211 Michelson Drive
Suite 700
Irvine, CA 92612
Email: scook@brownrudnick.com; abaynham@brownrudnick.com

*Counsel to Defendant Oliver Lindsay*
Michael Lipman
Karen Alexander
Duane Morris LLP
750 B Street

Suite 2900
San Diego, CA 92101
Email: mllipman@duanemorris.com; klalexander@duanemorris.com

*Counsel to Defendant Andrew Hackett*
Michael Grahn
Law Offices of Michael D. Grahn
1801 Century Park East
24th Floor
Los Angeles, CA 90067
Email: michael@grahnlaw.com

*Counsel to Defendant Annetta Budhu*
Joshua J. Jones
Federal Defenders of San Diego
225 Broadway
Suite 900
San Diego, CA 92101
Email: joshua_jones@fd.org

*Counsel to Defendant Kevin Gillespie*
Gerardo A Gonzalez
Law Offices of Gerardo A. Gonzalez
101 West Broadway
Suite 1950
San Diego, CA 92101
Email: gerardo@gonzalezlaw.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 21, 2018.        *s/ Aaron P. Arnzen*
                                    AARON P. ARNZEN

16

18CV1530-WQH-JLB