Michael Cedillos (SBN 284794)
**GREENBERG TRAURIG, LLP**
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
Tel.: (312) 456-8400
cedillosm@gtlaw.com

Miriam Bahcall (*pro hac vice*), IL ARDC #6191823, bahcallm@gtlaw.com
Craig Martin (*pro hac vice*), IL ARDC #6336324, craig.martin@gtlaw.com
Attorneys for Defendant Gannon Giguiere

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

GANNON GIGUIERE, OLIVER-BARRET LINDSAY, ANDREW HACKETT, KEVIN GILLESPIE, and ANNETTA BUDHU,

Defendants.

CASE NO. 18-CV-1530 WQH-JLB

**DEFENDANT GANNON GIGUIERE'S RESPONSE TO PLAINTIFF SEC'S "MEMORANDUM OF CLARIFICATION" [DKT 201]**

The purported "Memorandum of Clarification" (Dkt. 201) submitted by Plaintiff SEC on Friday, May 3, 2024 is **not** what Defendant Gannon Giguiere ("Mr. Giguiere") had expected to see based on his counsel's conversations with Plaintiff SEC's counsel after the hearing before this Court on Monday, April 29, 2024.

First, based on those conversations, Mr. Giguiere expected to see a draft of any submission of "Clarification" prior to its filing. Counsel for the parties had literally agreed to run draft submissions by each other prior to filing. But the SEC filed its submission without sharing anything with Mr. Giguiere – not even that the SEC had already ordered a copy of the transcript. Instead, the SEC filed its "Clarification" two hours after Mr. Giguiere filed a request for the transcript (Dkt. 199) – shortly after which Mr. Giguiere learned from the Court Reporter (not the SEC) that the SEC had already requested and received a copy.

Second, Mr. Giguiere expected to see a discussion of *SEC v. Beck*, 2:22-cv-00812-FWS-JC (C.D. Cal. March 26, 2024) (attached hereto as **Exhibit A**) – because *Beck* is what counsel discussed as forming the basis of the parties' request that the Court return briefly after the end of our hearing. Specifically, immediately after the hearing, counsel for Mr. Giguiere informed counsel for the SEC that his representation that "no court in the Ninth Circuit [ ] has followed [*SEC v. Govil*, 86 F.4th 89 (2d Cir. 2023)]" (Tr. (Dkt. 202) 28:14-16) was incorrect in light of *Beck*. That is, *Beck* is literally the reason that the parties asked the Court to return.

Because, however, the Court instructed the parties to submit a written clarification instead, the parties agreed to request the transcript, review it, and share any planned submissions with each other prior to filing. Instead, however, the SEC unilaterally requested a transcript, did not inform Mr. Giguiere that it had done so, and filed its purported "Clarification" without consulting with Mr. Giguiere's counsel – and without mentioning *Beck*.

**1. *Beck* is a Ninth Circuit Decision that Follows *Govil***

As the SEC failed to address *Beck*, Mr. Giguiere will do so. To wit, at the hearing,

counsel for the SEC stated:

> This idea of pecuniary harm to investors being a prerequisite is solely a Second Circuit notion and has not been exported to any other circuits. That's **the *Govil* decision**, and th[ere]'s **no court in the Ninth Circuit that has followed that[,]** or any other circuit.

Tr. (Dkt. 202) 28:14-16 (bold emphases added).

As Mr. Gigiere's counsel expressly pointed out to SEC's counsel immediately after the hearing, however, *Beck* is a decision from the Central District of California – which is in the Ninth Circuit – that **did** follow *Govil*, holding – over the SEC's objections – that *Govil* was correct that *Liu*'s "for victims" requirement "still applies to disgorgement under section 78u(d)(7)." *See Beck* (Ex. A hereto), 2024 U.S. Dist. LEXIS 71410 at *41 ("Because *Liu* treats the equitable limitations outlined therein as inherent to statutes authorizing disgorgement, including the requirement that disgorgement be awarded for victims, the court concludes this requirement still applies to disgorgement under section 78u(d)(7). *See Govil*, 86 F.4th at 102…").

In addition, as counsel for the SEC in this case well knows because he is lead counsel for the SEC in *SEC v. Sripetch*, 20-CV-01864-H-BGS (S.D. Cal.), on April 8, 2024 Judge Marilyn L. Huff issued an order (attached hereto as **Exhibit B**) that cited *Govil* but, rather than rejecting it, simply declined to "resolve this split." *Sripetch* (Ex. B hereto), 2024 U.S. Dist. LEXIS 65018 at *13-14. *See also* Dkt. 202 (Tr.) 27:19-22 (SEC counsel citing *Sripetch* to this court at the hearing for the proposition that the SEC can wait until after a judgment is entered to petition for a Fair Fund, but not identifying it in the instant "Clarification," which only addresses *SEC v. Cole*).

In sum, *Beck* and *Sripetch* are two decisions "in the Ninth Circuit" – one of which expressly followed *Govil* (*Beck*) and the other of which expressly declined to rule with respect to *Govil* (*Sripetch*). As such, the SEC's representation that "no court in the Ninth Circuit" has followed *Govil* was simply false. *Beck* did; and *Sripetch* considered it without deciding – but did not reject it.

**2. <u>The SEC Admits It Has Made No Effort to Identify Any Victims of Mr. Giguiere</u>**

If the SEC's "Clarification" makes anything clear here, it is that **the SEC has not identified *<u>any</u>* purported victims of Mr. Giguiere in connection with ESSI or KVMD and *<u>does not intend to even try</u>* to identify any victims of Mr. Giguiere** unless and until (a) an award is already entered in its favor and then (b) "sufficient monies are collected":

> That is, **if sufficient monies are collected** (in the form of disgorgement and/or civil penalties) to provide a meaningful recovery to harmed investors, **and the SEC is able to identify and locate investors**, the SEC intends to return to the Court to (i) seek the establishment of a Fair Fund … and (ii) submit a proposed plan of distribution of the collected funds (including disgorgement and/or penalties) for approval by the court.
>
> … In this case, provided that sufficient funds are collected for a distribution to be feasible **and that we are able to obtain adequate identification and contact information for the harmed investors**, the SEC anticipates that it would likely propose distributing collected funds using a non-claims process in which notices will be sent to eligible claimant as defined in the distribution plan.

Dkt. 201 2:10-16, 20-24 (bold emphases added; parentheses in original).

However, even assuming *arguendo* that a petition for a Fair Fund can be filed after funds are collected (*see* Dkt. 201 at 2:12-20), that doesn't obviate the need for the SEC to identify "victims" of Mr. Giguiere in order to get an award of disgorgement against him in the first place.

That is, everyone agrees that *Liu* held that "[t]he equitable nature of the profits remedy generally requires the SEC to return a defendant's gains to wronged investors for their benefit," *Liu*, 140 S. Ct. at 1948, and therefore any disgorgement must be awarded "for victims" of the defendant at issue's securities violations. *Id.* at 1940; Dkt. 157-1 (SEC Motion for Penalties) at 15:4-6 (quoting *Liu* for this point); Dkt. 202 (Tr.) 28:3-9 (same). The SEC's argument, however, is different: That "pecuniary harm to investors [is not] a prerequisite" to granting an order of disgorgement under *Liu* on the theory that the SEC can get an award of disgorgement, collect on that award, and ***<u>then</u>*** try to find "victims." (Dkt. 202 (Tr.) 28:12-20).

But there is a reason the SEC cites no authority in support of that proposition: There is none. In fact, in holding that an order of disgorgement can be entered only if it (a) does not exceed a wrong-doer's net profits and (b) is awarded "for victims," *Liu* expressly rejected the SEC's argument that "the very fact that it conducted an enforcement action satisfies the requirement that [disgorgement] is 'appropriate or necessary for the benefit of investors.'" *Liu*, 140 S. Ct. at 1948. That is, under *Liu*, there have to be "victims" of the fraud *before* an award of disgorgement can issue because, as *Liu* explained, "the SEC's equitable, profits-based remedy must do more than simply benefit the public at large by virtue of depriving a wrongdoer of ill-gotten gains." *Id*.

Accordingly, *Govil* is not novel. It simply follows *Liu*. As *Govil* explained:

> If we were to understand "victim" as including defrauded investors who suffered no pecuniary harm – and thus allow those investors to receive the proceeds of disgorgement – we would not be restoring the status quo for those investors. We would be conferring a windfall on those who received the benefit of the bargain.
>
> That is why the *Liu* Court emphasized that such an equitable remedy is about "*return[ing]* the funds to victims." [*Liu*] at 1948 (emphasis added). The return of funds presupposes pecuniary harm. Funds cannot be *returned* if there was no deprivation in the first place.

*Govil*, 86 F.4th at 103 (emphases and first brackets in original, footnotes omitted).

Perhaps this is why the SEC did not appeal *Govil* and simply decided to argue that it should not be followed outside the Second Circuit.

**3. <u>The SEC's Own Complaint Shows There Are No More KVMD Victims In Any Event</u>**

Having been forced to admit that:

A. The SEC suspended trading in ESSI for reasons completely separate from the violations the SEC brings against Mr. Giguiere in this case and therefore the SEC has not established that any victims were harmed by Mr. Giguiere's ESSI-related violations (*see* Dkt. 202 (Tr.) 9:10-23 (admitting the "mistake that we made in our reply brief")); and that

B. The United States Treasury is already sitting on $1,769,437.23 that Mr. Giguiere civilly forfeited in connection with ESSI because no one came forward to claim any of the money despite due process relating to notice of the proceeding and there having been a pending derivative suit filed by ESSI against Mr. Giguiere at exact the same time (*see* Dkt. 157-1 at 2:12-17),

the SEC's "Clarification" does not address ESSI at all. (*See generally* Dkt. 201).

Instead, the "Clarification" attempts to walk back the SEC's prior assertion that KVMD investors "haven't received enough restitution" despite this Court's criminal restitution order having been fully paid by MLARS (Dkt. 202 (Tr.) 31:14-16) and focuses solely on a hypothetical, future attempt to identify additional victims that (a) assumes that the SEC has already been awarded disgorgement despite not yet having identified any non-addressed victims of KVMD and then would (b) essentially re-do the claims process that this Court and the DOJ already undertook in connection with KVMD in the criminal matter. (*See* Dkt. 201 at 3:3-11).

But, as Mr. Giguiere explained at the hearing (Dkt. 202 (Tr.) 15:3-16:16), the SEC's own allegations establish that 79% of the trading in KVMD was between Mr. Giguiere and his co-conspirator Oliver Lindsay. (Second Am. Compl. ¶ 55). This means that 79% of the alleged $1,573,958 in trading (Dkt. 157-1 at 4:10 (citing Brucculeri Decl. ¶ 4)) is arguably attributable to defendants in this case – who logically are not and cannot be "victims" that the SEC is trying to benefit here.

As such, even setting aside the fact that the $1,573,958 double-counts both sides of the matched trade dollars (because matched trading, by definition, is the repeated exchange of the same money and shares between the same people – *see* Dkt. 202 (Tr.) 15:14-16:13), that leaves a maximum of only $330,531.18 in trading by "real" investors (21% of $1,573,958). But Mr. Giguiere already forfeited $266,703.37, which means that at most only $63,827.81 could possibly be outstanding ($330,531.18 - $266,703.37).

Moreover, this Court already determined that the investors who did come forward after being sent notice by the DOJ were entitled to only $187,893.43. So, even after MLARS recently decided to pay the victims in full, there is still approximately $100,000 sitting with the government – in addition to the $1,769,437.23 forfeited in connection with ESSI – already available for distribution if the government so chooses. (*See* **Exhibit C** hereto (partial email chain) at p. 2 ("We just informed MLARS that the current outstanding restitution balance is $165,608.35."); $266,703.37 - $165,608.35 = $101,095.02).

* * *

In sum, the only thing the SEC has "clarified" is that there are no identifiable "victims" that were "wronged" by Mr. Giguere but have not yet been compensated – and the SEC does not even intend to try to find any unless and until they have already been awarded disgorgement. But that is not the standard. Under *Liu*, disgorgement can be ordered only if it (a) does not exceed a wrong-doer's net profits and (b) is awarded "for victims," *Liu*, 140 S. Ct. at 1940, which means "return[ing] the funds to victims," *id.* at 1948 – who *Govil* logically described as investors who suffered "pecuniary harm," 86 F.4th at 102, because disgorgement "must do more than simply benefit the public at large by virtue of depriving a wrongdoer of ill-gotten gains," *Liu*, 140 S. Ct. at 1948, and "[f]unds cannot be *returned* if there was no deprivation in the first place." *Govil*, 86 F.4th at 103.

Because *Liu* holds that disgorgement cannot be awarded without first establishing that there are (1) "victims" of Mr. Giguiere who (2) have not yet been compensated (*Liu*, 140 S. Ct. at 1940, 1948-49; Dkt. 202 (Tr.) 31:4 ("we do not give investors windfalls")), and the SEC has identified none in this case, the SEC's claim for disgorgement fails as a matter of law. *Liu*, 140 S. Ct. at 1940, 1948-49.

**WHEREFORE**, for the foregoing reasons and the reasons set forth in Mr. Giguere's Memorandum of Points and Authorities in Opposition to Plaintiff SEC's Motion for Civil Penalties, Disgorgement, and Prejudgment Interest (Dkt. 170), his Surreply (Dkt. 181), and the parties' oral argument before this Court on April 29, 2024 (Dkt. 202 (Tr.)), Mr. Giguiere respectfully requests that the Court deny the SEC's Motion For a Civil Penalty, Disgorgement, And Prejudgment Interest (Dkt. 157, 157-1), and grant him such other and further relief as the Court deems just.

RESPECTFULLY SUBMITTED this 8th day of May, 2024.

GREENBERG TRAURIG, LLP

By: */s/ Miriam G. Bahcall*
Michael Cedillos
Miriam G. Bahcall (*pro hac vice*)
Craig Martin (*pro hac vice*)
*Attorneys for Defendant Gannon Giguiere*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2024, I caused to be filed electronically this **DEFENDANT GANNON GIGUIERE'S RESPONSE TO PLAINTIFF SEC'S "MEMORANDUM OF CLARIFICATION" [DKT 201]** with the Clerk of the Court using the Court's CM/ECF system which will send notification of such filing to all counsel and parties of record.

By: *\/s/ Miriam G. Bahcall*
MIRIAM G. BAHCALL (*pro hac vice*)
Attorney for Defendant Gannon Giguiere
E-mail: BahcallM@gtlaw.com