UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>GANNON GIGUIERE, et al.,<br><br>Defendants. | Case No.: 18-cv-01530-WQH-JLB<br><br>**MEMORANDUM SUPPLEMENTING THE RECORD IN SUPPORT OF DEFENDANT'S MOTION TO REOPEN DISCOVERY** |

The Defendant Andrew Hackett respectfully submits this memorandum to supplement the April 10, 2024 Motion to Reopen Discovery (Docket No. 193) in light of the Discovery and Status hearing held on May 14, 2024, and to further clarify for the Court the proposed scope of reopening discovery and its relevance.

### Summary of Plaintiff's Cause of Action Against the Defendant

The Plaintiff Securities and Exchange Commission ("SEC") has alleged violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-(a) and (c) [1 C.F.R. § 240.10b-5(a) and (c)]. Under § 240.10b-5 (a) and (c), *"it shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) to employ any* **device, scheme, or artifice to defraud**... *(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."*

In the SEC's first amended complaint it explains that the conduit to which the scheme or artifice to defraud occurred, in this matter, was through a "pump and dump" scheme. (Dkt No. 92, pg. 3, lines 1-4). Moreover, the SEC, in a footnote to its first amended complaint, defines a pump and dump scheme as a "group of individuals...enganging in wash and matched trading...paying for stock promotions...share price reaches a desireable level...individuals 'dump' their shares..." (Dkt No. 92, pg 3, footnote 1).

### **Proposed Discovery to Propound**

The Defendant seeks to reopen discovery for the limited purpose of investigating the following:

1. Any documentation that the SEC is in possession of that confirms Alexander Smirnov is the "Alex" individual that the Defendant spoke with via recorded telephone, as referenced in Exhibit 6 of the Defendant Andrew Hackett's Declaration (Dkt. No. 207).
2. Take the deposition of Alexander Smirnov.
3. Any relevant trading account documentation that the SEC is in possession of regarding Alexander Smirnov.
4. Any documentation that the SEC is in possession of regarding alias' of Alexander Smirnov.
5. Any documentation or reports that the SEC is in possession of regarding nominee accounts of Alexander Smirnov.
6. Any documentation that the SEC is in possession of regarding the connection between the 11 individuals identified, from the SEC's Blue Sheet Data (Dkt. No. 193), and Alexander Smirnov.
7. The submission of no more than 25 written interrogatories to the SEC regarding the aforementioned proposed discovery 1-6, in compliance with Rule 33 of the Federal Rules of Civil Procedure.

8. The submission of no more than 25 written interrogatories to the Federal Bureau of Investigations ("FBI") regarding the aforementioned proposed discovery 1-6, in compliance with Rule 33 of the Federal Rules of Civil Procedure.

9. Take the deposition of Cem Can by remote means under Rule 30(4) of the Federal Rules of Civil Procedure, regarding any knowledge of Alexander Smirnov's hidden trading accounts, conversations with Alexander Smirnov regarding Robert Farrill and Andrew Hackett and any business dealings with Alexander Smirnov.

10. SEC Blue Sheet Data regarding WRIT Media Group ("WRIT") from January 1, 2015 – January 1, 2019.

11. The submission of no more than 25 written interrogatories to Liana Millhouse regarding any professional business relationship with Alexander Smirnov, his associates, and the company "Avalon", in compliance with Rule 33 of the Federal Rules of Civil Procedure.

12. The submission of no more than 25 written interrogatories to David Wolfson regarding any professional business relationship with Alexander Smirnov, his associates, and the company "Avalon", in compliance with Rule 33 of the Federal Rules of Civil Procedure.

**Relevance of Proposed Discovery**

The Defendant seeks to obtain the aforementioned proposed discovery in order to adequately prepare a defense to the Plaintiff's allegations in its complaint. Under Rule 26 (b) of the Federal Rules of Civil Procedure, *"unless otherwise limited by court order, the scope of discovery is...parties may obtain discovery regarding any nonprivileged matter **that is relevant to any party's** claim or **defense** and proportional to the needs of the case, **considering the importance of the issues at stake** in the action..."* The heart of the Plaintiff's allegations

surrounds the proposition that the Defendant engaged in an illegal pump and dump scheme, and specifically, engaged in the manipulative trading practice of match trading. Moreover, the Plaintiff's statement of facts in its cause of action alleges that the Defendant used Robert Farrill as a nominee for the purpose of engaging in manipulative trading practices. The proposed discovery seeks to identify Alexander Smirnov's involvement in the subject security HVST/ASNT, and any manipulative trading performed by Smirnov, and or his associates/nominees on HVST/ASNT. Additionally, the Plaintiff has failed to produce evidence of the Defendant's trades in the relevant security, despite the cause of action for securities fraud. Thus, the proposed discovery seeks to obtain relevant trading information from Smirnov and the 11 other individuals to adequately present a defense to the Plaintiff's securities fraud cause of action. Moreover, the Plaintiff relies primarily on the evidence obtained in the parallel criminal case that was obtained by the FBI, to substantiate its cause of action. Thus, the evidentiary issues with the evidence obtained by the FBI, given to the Department of Justice, and subsequently, provided to the Plaintiff is relevant to this matter before the Court.

### **Defendant's History of Due Dilligence Regarding Discovery**

Additionally, the Defendant was made aware of Smirnov's identity as a FBI Confidential Human Resource as of late March 2024, when the story broke nationally through the public media. Although the Defendant possessed limited evidence from the parallel criminal matter concerning an "Alex," the Defendant was not aware of his full identity, nor his status with the FBI. However, upon learning of Smirnov's identity, the Defendant acted with immediate due diligence by contacting the Plaintiff, and the Department of Justice to seek relevant evidence pertaining to Smirnov and this matter.

Moreover, during the Defendant's deposition taken by the Plaintiff, the Defendant expressed concern that the discovery the parties currently have in possession does not adequately represent the authentic orgins and the entirety of the matter at hand. Although the Plaintiff, in its Declaration (Dkt. No 196) references a portion of the deposition where the Defendant does not personally take issue with the Plaintiff for the discrepencies (Exhibit "A"), the Plaintiff is nonetheless relying on evidence solely (outside of the Defendant's deposition) from the Department of Justice's parallel criminal case. Therefore, reopening discovery for the limited purpose mentioned previously is significantly important to preserve justice. The Defendant respectfully submits this Memorandum Supplementing Defendant's Motion to Reopen Discovery.

Dated: May 15, 2024

/s/ Andrew Hackett

Andrew Hackett (*pro se*)

Defendant

Email: andrewyge@gmail.com