CHRISTOPHER J. DUNNIGAN (NYS Bar No. 3054525)
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
Telephone: (212) 336-1100
Email: dunnigancj@sec.gov

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>GANNON GIGUIERE,<br>OLIVER-BARRET LINDSAY,<br>ANDREW HACKETT,<br>KEVIN GILLESPIE, AND<br>ANNETTA BUDHU,<br><br>Defendants. | Case No.: 18-cv.-1530-H-JLB<br><br>**MEMORANDUM IN RESPONSE TO DEFENDANT ANDREW HACKETT'S SUPPLEMENTAL SUBMISSION REGARDING MOTION TO REOPEN DISCOVERY** |

Pursuant to the Court's May 14, 2024 Order (Docket No. 210), Plaintiff Securities and Exchange Commission ("SEC") respectfully submits this memorandum in response to Defendant Andrew Hackett's supplemental memorandum (Dkt. No. 212) in support of his motion to reopen discovery (Dkt. No. 193) (the "Motion"). For the reasons set forth below and in the SEC's prior opposition papers and at the May 14, 2024 hearing, the Motion should be denied in its entirety. Alternatively, the SEC respectfully suggests that the Court hold the Motion in abeyance pending resolution of the SEC's anticipated motion for summary

judgment based on collateral estoppel, for which none of the information sought has any relevance.

**Preliminary Statement**

While Hackett initially claimed that the Motion was in response to his recent discovery that Alexander Smirnov was a confidential informant, his supplemental submission reflects that his true intention is to conduct a wholesale fishing expedition for information about numerous individuals (some of whom he did not even identify in his original moving papers) that is unlikely to lead to relevant evidence or have any bearing on the outcome of this case, and that, in any event, he could have sought long ago.

During the May 14, 2024 hearing, the Court probed the relevance of information that the Motion sought with respect to Smirnov and his business associate Boris Nayflish, while observing that Hackett could have timely requested discovery with respect to the 11 other individuals at issue in the Motion – purchasers of ASNT stock – whose identity has been known to Hackett for years. As to Smirnov and Nayflish, the Court invited Hackett to supplement his original submission with specific proposed written discovery requests and to address their relevance.

But rather than propose targeted written discovery requests or provide an explanation as to the relevance of those specific requests, Hackett's supplemental submission contains numerous broad discovery requests (such as to take depositions or submit unspecified interrogatories) that, while touching directly or indirectly on Smirnov, relate in total to 16 individuals, including people that Hackett did not even identify in his original moving papers but whom he has known about for years.

The Court should reject Hackett's belated request to conduct wide-ranging discovery. The information that Hackett seeks is simply not relevant to the outcome of this case and could have been sought in a timely fashion.

## Argument

### I. The Information Sought Is Irrelevant to Hackett's Liability in This Case

A. Hackett's Liability Is Based on Collateral Estoppel

As an initial matter, the information that Hackett seeks is irrelevant to the outcome of this case because of the applicability of the collateral estoppel doctrine.

"The [collateral estoppel] doctrine applies where the party invoking the doctrine can show that: '(1) the issue at stake is identical to an issue raised in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action." *SEC v. Reyes*, Case No. 06-cv.-04435-CRB, 2008 WL 3916247, *2 (N.D. Cal.), citing *Littlejohn v. United States,* 321 F.3d 915, 923 (9th Cir. 2003).

Moreover, "it is well established that a criminal conviction may be used to establish issue preclusion in a subsequent civil suit." *SEC v. Alexander*, 115 F.Supp.3d 1071 (N.D. Cal. 2015) (citing *Hinkle Nw., Inc. v. SEC*, 641 F.2d 1304, 1308 (9th Cir. 1981)); *see also Reyes*, 2008 WL 3916247, at *2 ("[A] criminal conviction . . . constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case."). "This is because the government bears a higher burden of proof in the criminal than in the civil context." *SEC v. Pierre*, Case No. 19-cv.-10299, 2024 WL 1994051, *7 (S.D.N.Y. May 6, 2024) (JPC) (internal quotations omitted). Accordingly, "[w]hen a defendant has already been convicted of criminal securities fraud, courts have not hesitated to apply the doctrine of collateral estoppel to civil securities fraud violations to bar re-litigation of factual issues necessarily decided in the criminal case." *SEC v. Braslau*, Case No. 14-cv.-01290-ODW, 2016 WL 5922666, *1 (C.D. Cal. May 13, 2016).

Here, Hackett's conviction in the parallel criminal case, captioned *United States v. Hackett*, 18-cr.-3072-TWR-1 (S.D. Cal.) (the "Criminal Case"), was based on the same factual allegations that are at issue in the instant SEC matter, and the two actions directly overlap. Accordingly, the SEC intends to move for summary judgment based on collateral estoppel.[1]

Because Hackett's liability can be established based on collateral estoppel and it is unnecessary to relitigate the same issues that were decided in the Criminal Case, the SEC submits that none of the information that Hackett seeks is relevant to establishing his liability in this matter. Accordingly, the Motion should be denied on that basis alone, or in the interest of efficiency, at minimum held in abeyance until after disposition of the SEC's summary judgment motion so as to avoid the needless expenditure of time and resources by the parties and the Court.[2]

B. Smirnov Is Irrelevant to the SEC's Allegations

Most of the information sought by Hackett is also irrelevant because Smirnov is unrelated to the SEC's Complaint. All of the proposed requests to some extent seek information relating to Smirnov or WRIT, a security with respect to which Smirnov was involved, but which is not relevant to the claims in this case. (Dkt. No. 212 at ¶¶ 1-12.)

The SEC's Complaint, like the Criminal Case, is based on Hackett's manipulation of ASNT (formerly HVST) stock. Based on the documents in the SEC's

---

[1] The SEC's summary judgment motion may also cite to: (i) admissions Hackett made at his October 2023 deposition; and (ii) with respect to remedies, an analysis by an SEC examiner as to Hackett's profits.

[2] To the extent the Court is concerned with Hackett's suggestion of insufficient disclosure in the Criminal Case, the SEC notes that a reversal of the criminal conviction for any reason would result in setting aside any judgment based on collateral estoppel in this matter. *See, Reyes*, 2008 WL 3916247 at *5.

investigative file for this matter and on consultation with the United States Attorney's Office, the SEC is unaware of any involvement by Smirnov with respect to ASNT.[3]

Indeed, based on a preliminary review, none of the documents in the SEC's investigative file containing mention of Smirnov relate to ASNT; rather, most, if not all, concern a different security, WRIT, or a proposed crypto currency, "Pelecoin." During the May 14 hearing, Hackett posited as a basis of relevance that evidence relating to the manipulation of WRIT was admitted at trial in the Criminal Case pursuant to Federal Rule of Evidence 404(b). But Hackett is mistaken. While the admissibility of certain evidence relating to WRIT was the subject of Rule 404(b) motion practice, no such evidence was ultimately admitted at trial, the term "WRIT" does not appear in the transcript of the trial, nor does Smirnov's name appear anywhere in the criminal trial transcript. (Crim. Dkt. Nos. 223, 280, 341-345.) Similarly, in the unlikely event that this matter was to proceed to trial, the SEC does not intend to offer evidence relating to WRIT or Smirnov.

In Hackett's supplemental submission, he again fails to "connect the dots," as the Court put it, as to why he believes Smirnov had anything to do with trading in ASNT stock. Hackett contends that the proposed discovery "seeks to identify Alexander Smirnov's involvement in the subject security HVST/ASNT, and any manipulative trading performed by Smirnov, and or his associates/nominees on HVST/ASNT." (Dkt. No. 212, pg. 4, line 5.) But Hackett still offers no explanation for why he believes the proposed discovery would lead to evidence of any involvement at all by Smirnov with respect to HVST/ASNT, and thus fails to demonstrate good cause to reopen discovery as to Smirnov. *See City of Pomona v.*

---

[3] The SEC has identified approximately 28 documents in its investigative file for this matter that contain the terms "Smirnov" or "Nayflish" and one voice recording with Smirnov (identified on the recording as "Alex"). None of these materials relate to ASNT. The SEC understands that at least some of these materials, including the voice recording, were previously produced in discovery in the Criminal Case.

*SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (directing district courts to consider "likelihood that discovery will lead to relevant evidence" when deciding motion to reopen discovery). Accordingly, none of the proposed discovery requests identified in in Hackett's supplemental submission have a proper basis to reopen discovery to the extent they call for information related to Smirnov or WRIT.

## II.     Hackett Fails to Demonstrate the Requisite Diligence to Reopen Discovery

As the Court alluded to at the May 14 hearing, Hackett has long been aware of the identities of the 11 individuals that traded ASNT stock, as identified in the blue sheet records introduced as Exhibits 404 and 405 at the criminal trial, and thus could have made any discovery requests with respect to these individuals during the discovery period. Hackett offered no explanation during the hearing as to his lack of diligence in this regard, and yet has renewed his request for discovery relating to these 11 individuals in his supplemental submission (*see* Request No. 6, Dkt. No. 212 at pg. 2), again without offering any justification for his lack of diligence. The Court should reject this request. *See Zivkovic v. S. Cal. Edison, Co.*, 302 F.3d 1080, 1087-88 (9th Cir. 2002) ("If the party seeking the modification [of a pretrial schedule] was not diligent, the inquiry should end and the motion to modify should not be granted.") (internal quotations omitted).

Hackett is similarly unable to demonstrate diligence with respect to the discovery he seeks of Liana Millhouse (Request No. 11) or David Wolfson (Request No. 12). The names of both individuals featured prominently during the criminal trial years ago, as Wolfson testified and Millhouse was mentioned at least 186 times (Crim. Dkt. Nos. 341-345), and both individuals were identified in the SEC's Initial Disclosures, yet Hackett did not seek any discovery relating to them until now. Nor

does Hackett provide an explanation for his delay in seeking a deposition of Cem Can (Request No. 9), whose relevance he fails to explain, as discussed further below.[4]

Finally, even as to Smirnov, Hackett's explanation for his delay is insufficient. While Hackett proffers that he only recently learned of Smirnov's role as a confidential informant (Dkt. 212 at pg. 4), the SEC understands that Hackett received two recorded calls with "Alex" during criminal discovery relating to WRIT regarding WRIT. Hackett could have previously attempted to seek discovery in this case as to "Alex" or WRIT, but he chose not to do so. Therefore, Hackett should be barred from doing so now, especially considering the irrelevance of the information sought. *Zivkovic*, 302 F.3d at 1087-88 (9th Cir. 2002).

**III.  Hackett's Proposed Requests Are Also Deficient for Other Reasons.**

While the SEC submits that none of Hackett's proposed requests establish good cause to reopen discovery for the reasons discussed above, many of Hackett's requests are also objectionable for other reasons.[5]

For example, Hackett's Request No. 1 is not only calls for irrelevant evidence insofar as it relates to Smirnov, but the SEC already confirmed during the May 14 hearing its understanding based on information provided by the United States Attorney's Office that Smirnov was the "Alex" on a recorded call provided to Hackett during criminal discovery; thus, this issue is not in dispute, and the SEC does not in any event possesses independent documentation that the Smirnov whose name appears in the SEC's investigative file was a confidential informant.

---

[4] Hackett did not identify Millhouse, Wolfson, or Cem Can in his original Motion or at the May 14 hearing but lists them for the first time in his May 15 supplemental submission.

[5] This section is not intended to reflect an exhaustive list of the SEC's potential objections. If discovery is reopened, the SEC may assert additional objections to specific requests within the time period provided under the applicable rules.

7

Hackett's Request Nos. 8, 11 and 12 request that Hackett be permitted to propound interrogatories to the FBI, Liana Millhouse, and David Wolfson, but these proposed requests are improper because, among other reasons, neither the FBI, Millhouse, nor Wolfson are parties to this action. *See*, Fed. R. Civ. Proc. 33; *United States v. Miljus*, Case No. 06-cv.-1832-PK, 2009 WL 10694208, *3 (D. Oregon) ("Because the Federal Rules of Civil Procedure do not provide for the issuance of interrogatories to nonparties, this court is without authority to compel responses to [defendant's] non-party interrogatories").

Hackett's Request No. 9 for the first time identifies Cem Can as an individual Hackett seeks to depose. Hackett provides no relevancy justification for the proposed deposition, no explanation as to how he or she relates to the alleged pump-and-dump scheme involving ASNT, and no excuse for his failure to seek the deposition within the discovery period. While a preliminary review of the document database in the SEC's investigative file reflects that Cem Can was a signatory for a Belize-based entity, Unicorn International Securities, LLC ("Unicorn"), the SEC lacks insight into why Hackett believes Cem Can or Unicorn is relevant to this case. For the SEC's part, Cem Can was not identified in the SEC's Initial Disclosures because the SEC did not, and does not, intend to use Cem Can to support its claims in this case. Nor was Cem Can mentioned at the criminal trial. (Crim. Dkt. Nos. 341-345.)

## Conclusion

For the reasons set forth above, Hackett's supplemental submission fails to cure his inability to show "good cause" to reopen discovery and the Court should deny the Motion in its entirety.

Dated: May 17, 2024
         New York, New York


/s/ Christopher J. Dunnigan
Christopher J. Dunnigan
Christine Ely
Securities and Exchange Commission
Division of Enforcement
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
E-mail: dunnigancj@sec.gov
*Attorneys for Plaintiff*
*Securities and Exchange Commission*

9

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION
100 Pearl St., Suite 20-100, New York, NY 10004-2616
Tel.: (212) 336-0061

On May 17, 2024, I caused to be served the document entitled **MEMORANDUM IN RESPONSE TO DEFENDANT ANDREW HACKETT'S SUPPLEMENTAL SUBMISSION REGARDING MOTION TO REOPEN DISCOVERY** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at New York, NY, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at New York, NY, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date: May 17, 2024
   New York, New York

/s/ Christopher J. Dunnigan
Christopher J. Dunnigan

*SEC v. Giguiere*

**United States District Court—Southern District of California**

**Case No. 18-cv.-1530-H-JLB**

**SERVICE LIST**

Miriam G. Bahcall, Esq.
Greenberg Traurig, LLP
77 West Wacker Drive, Suite 3100
Chicago, IL 60601

*Counsel for Defendant Gannon Giguiere (by E-File)*

Andrew Hackett (andrewgy@gmail.com)

*Defendant pro se (by Electronic Mail)*

11