1
2
3
4
5
6
7
8
9            UNITED STATES DISTRICT COURT
10           SOUTHERN DISTRICT OF CALIFORNIA
11

12   SECURITIES AND EXCHANGE                Case No.:  18-cv-1530-WQH-JLB
     COMMISSION,
13                                          **ORDER GRANTING IN PART AND**
                                Plaintiff,  **DENYING IN PART DEFENDANT**
14                                          **HACKETT'S MOTION TO REOPEN**
     v.                                     **DISCOVERY**
15
     GANNON GIGUIERE, et al.,
16
                                Defendants.
17                                          **[ECF NO.  193]**
18

19

20        Before the Court is Defendant Andrew Hackett's ("Hackett") Motion to Reopen Fact
21   Discovery.  (ECF No. 193.)  Plaintiff Securities and Exchange Commission ("SEC" or
22   "Commission") opposes the motion.  (ECF No. 195.)  For the reasons set forth below,
23   Defendant Hackett's motion is **GRANTED IN PART and DENIED IN PART**.

24        **I.      BACKGROUND**

25   **A.   Factual Background**

26        On July 6, 2018, the SEC filed a complaint against Defendants Gannon Giguiere,
27   Oliver-Barret Lindsay, Andrew Hackett, Kevin Gillespie, and Annetta Budhu.  (ECF No.
28   1.)  The SEC filed First and Second Amended Complaints on August 5, 2022, and April 7,

2023, respectively.  (ECF Nos. 92, 136.)  The Second Amended Complaint ("SAC") alleges violations of Section 10(b) of the Securities Exchange Act (15 U.S.C. § 78(j)(b)) and Rules 10b-5(a) and (c) thereunder (17 C.F.R. §240.10b-5(a), (c)) resulting from a "pump and dump" scheme[1] related to three penny stocks.  The first claim for relief alleges that Defendants Giguiere and Lindsay engaged in fraud in connection with Kelvin Medical, Inc. ("KVMD") stock.  (ECF No. 136 at 25-26.)  The second claim for relief alleges that Defendants Gillespie, Hackett, and Budhu engaged in fraud in connection with Arias Intel Corp. ("ASNT") stock.  (*Id.* at 26.)  The third claim for relief alleges that Defendant Giguiere engaged in fraud in connection with Eco Science Solutions, Inc. ("ESSI") stock.  (*Id.* at 27.)

With respect to the alleged fraud relating to ASNT stock, the SAC alleges that in October 2017, Defendants Budhu, Gillespie, and Hackett agreed with a cooperating witness to promote the stock on TheMoneyStreet in connection with their planned pump and dump scheme.  (*Id.* at 3.)  The cooperating witness, without Defendants' knowledge, recorded phone calls and preserved encrypted email and text messages that Defendants sought to hide from, among others, law enforcement.  (*Id.*)  In December 2017, the cooperating witness introduced Hackett to an individual who claimed to be the ringleader of a network of corrupt stockholders who would buy the ASNT stock from Hackett in their customers' accounts, and without their customers' knowledge, in exchange for a thirty percent kickback.  (ECF No. 136 at 3.)  Unbeknownst to Hackett, the purported ringleader

---

[1] In a "pump and dump" scheme:

> [A] group of individuals who control the "free trading" shares of an issuer with a thinly-traded stock . . . inflate the issuer's share price and trading volume through, among other things, engaging in wash and matched trading, issuing false or misleading press releases, or paying for stock promotions. When the issuer's share price reaches a desirable level or target price, the individuals "dump" their shares into the buying volume generated during the "pump" phase for substantial financial gain.

(ECF No. 136 at 3 n.1.)

was an undercover FBI agent ("UC").  (*Id.*)  Between December 22, 2017, and January 18, 2018, Hackett sold over 14,000 shares of ASNT stock in matched trades with the UC that he coordinated with the cooperating witness.  (*Id.* at 4.)  Specifically, Hackett coordinated

> trading with the UC in phone calls and encrypted message chats with the cooperating witness, in which he agreed to place sale orders of ASNT in substantially the same size, at the same time, and at substantially the same prices at which he understood the UC was placing his buy orders.

(*Id.* at 17.)  Hackett allegedly engaged in this scheme to liquidate his holdings and create a misleading appearance of active trading in ASNT.  (*Id.*)

**B.   Procedural Background**[2]

On October 24, 2018, the Honorable William Q.  Hayes stayed this case pending the resolution of the charges against the defendants in two parallel criminal proceedings, *United States v. Giguiere et al.,* Case No. 18-cr-3071-WQH, and *United States v. Hackett et al.*, Case No. 18-cr-3072-TWR.  (ECF No. 44.)  On August 2, 2021, a jury in Hackett's criminal case found Hackett guilty of one count of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, and one count of securities fraud in violation of 15 U.S.C. § 78j(b) and 78ff.  *See United States v. Hackett et al.*, Case No. 18-cr-3072-TWR, ECF Nos. 300-01.  On June 9, 2022, Hackett was sentenced to forty-six months in prison.  *See id.*, ECF Nos. 412-13.[3]  The stay in the instant case was lifted on June 16, 2022.  (ECF No. 76.)

On October 6, 2022, this Court issued a Notice and Order Setting Early Neutral Evaluation and Case Management Conferences.  (ECF No. 97.)  In accordance with that order, the SEC and defendants Giguiere and Hackett filed a Joint Discovery Plan on

---

[2] The Court sets forth only those proceedings relevant to the instant motion.

[3] Hackett's appeal of his conviction and sentence are currently pending before the Ninth Circuit.  *See United States v. Hackett*, No.  22-50142 (9th Cir. filed June 23, 2022).  The appeal was argued and submitted on August 21, 2023.  *Id.*, ECF No. 51.

November 7, 2022. (ECF No. 98.)[4]  On December 7, 2022, this Court held an Early Neutral Evaluation Conference ("ENE").  (ECF Nos. 115–16.)  The case settled in principle as to Defendants Giguiere and Budhu but did not settle as to Hackett.  (ECF No. 115.)  The Court held a Case Management Conference following the ENE and issued a Scheduling Order Regulating Discovery and Other Pre-Trial Proceedings ("Scheduling Order") on December 9, 2022.  (ECF No. 117.)  The Scheduling Order required all fact and expert discovery to be completed by August 16, 2023.  (*Id.*)

On August 21, 2023, the Court issued an order addressing the Commission's motion for leave to take Hackett's deposition in prison, and Hackett's motion for extension of time to complete discovery, in which he sought to conduct all discovery after his release to home confinement on October 16, 2023.  (ECF No. 151.)  The Court stated:

> As Hackett has proffered that he will be released to home confinement in approximately two months, a relatively short time in the future, the Court finds good cause to briefly delay Hackett's deposition so that he might have access to his documents to better prepare for his deposition.  Accordingly, the Court will extend the discovery cut off to October 27, 2023.  To the extent Hackett's request is for a date beyond October 27, 2023, the motion is denied without prejudice for failure to fully set forth good cause.  Specifically, Hackett has failed to specify why the additional discovery he intends to conduct is necessary and to what extent he has been diligent in conducting discovery within the deadline set by the Court.

(*Id.* at 2–3.)

On December 11, 2023, the Court conducted a Mandatory Settlement Conference ("MSC"), during which the SEC and Hackett reached a conditional settlement .  (ECF No. 165.)  At the joint request of these parties, the undersigned Court held a further MSC on March 14, 2024, to mediate the parties' impasse regarding a proposed consent and final

---

[4] Defendants Lindsay and Gillespie each settled with the SEC prior to the submission of the Joint Discovery Plan.  (ECF Nos. 77, 79–80 [Lindsay]; ECF Nos. 88–90 [Gillespie].)  Defendant Budhu refused to participate in the Federal Rule of Civil Procedure 26(f) conference.  (ECF No. 98 at 2 n.1.)

judgment.  (ECF Nos. 186–188.)  The Court directed the parties "to jointly call chambers to advise whether they have worked out the language of the settlement agreement or require further assistance from the Court." (ECF No. 188.)  The parties did not contact chambers.

On April 10, 2024, Hackett filed the instant motion.  (ECF No. 193.)   The Court held a hearing on May 14, 2024.   (ECF No. 209.)   As determined at the hearing and memorialized in a subsequent Minute Order, the Court granted Hackett leave to supplement his motion by May 15, 2024, to provide specific proposed discovery requests, address the relevance of the requests, and further address his due diligence efforts with respect to discovery regarding Alexander Smirnov and Mr. Nayflish. (ECF No. 210.)  Hackett timely filed his supplemental brief.  (ECF No. 212.)  The Court granted the SEC until May 17, 2024, to respond (ECF No. 210). The SEC did so.  (ECF No. 213.) The Court did not authorize further briefing.  Nonetheless, on May 20, 2024, Hackett filed a Reply (ECF No. 215), which the SEC moved to strike.  (ECF No. 216.)  By separate Order, the Court grants the SEC's motion to strike.

## II.   LEGAL STANDARDS

"District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" *Hunt v. County of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quoting *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011)).  A scheduling order issued pursuant to Rule 16 is required to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A).  The schedule may be modified "only for good cause and with the judge's consent." *Id.* at R. 16(b)(4).  The good cause standard under Rule 16(b) "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

"The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting *Johnson*, 975 F.2d at 609).  "If the party seeking the modification 'was not diligent, the inquiry should end' and the motion to modify should

not be granted." *Id.* (quoting *Johnson*, 975 F.2d at 609).  Parties must therefore "diligently attempt to adhere to [the] schedule throughout the . . . course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D.  605, 607 (E.D. Cal. 1999).

In addition, when amendment of the schedule would reopen discovery, courts in the Ninth Circuit are required to consider the following factors:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir.  2017) (quoting *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995)).

## III.   DISCUSSION

### A.   Parties' Arguments

Hackett moves to reopen fact discovery in this matter for the limited purpose of:

> [A]llowing discovery regarding ALEXANDER SMIRNOV, a Confidential Human [Source] ("CHS") for the Federal Bureau of Investigation ("FBI") and his involvement with the Defendant in this matter before the Court, including any recorded conversations with the Defendant regarding the relevant "scheme," recorded conversations regarding Michael Forster ("cooperating witness"), recorded conversations with others regarding the Defendant and, or, the relevant "scheme," in addition to any relevant discovery involving Mr. Smirnov's trading activity, [and/or] his trading activity through the use of nominee accounts of foreign nationals, and any relevant documentation involving BORIS NAYFLISH and his trading activity relevant to the matter before the Court, and any relevant information involving both Mr.  Smirnov and Mr.   Nayflish and the following individuals: ALEKSANDR D. KOSTROV, DMYTRO FEDORENKO, PAVEL BOCHAROV, LIDIA FOGEL, ANNA TIMAKINA, SPARTAK YADGAROV, MAXIM BASINSKI, AIRAT DAUTOV, OLEKSII V HORIACH, ALEXEY MINDRUL, ANDREI V.  MASTILIN.[5]

---

[5]  This is the discovery as described in Hackett's Motion.  In his supplement, he includes discovery requests beyond these confines, to include the deposition of Cem Can, "SEC

18-cv-1530-WQH-JLB

(ECF No. 193 at 1.)

Hackett explains that following the March 14, 2024 Mandatory Settlement Conference, he became aware of the identity of a former confidential human source (CHS) named Alexander Smirnov through Smirnov's indictment in Case Number 2:24-cr-00091-ODW in the Central District of California.  (*Id.* at 2.)  He contends that the indictment against Mr. Smirnov alleges that as a CHS, Smirnov had been admonished that he was to provide truthful information to the FBI and was not to fabricate evidence.  (*Id.*)  According to Hackett's investigation of Mr. Smirnov through public media sources, including the Washington Post and Associated Press, Smirnov "has been heavily involved in business [activities] within the stock markets, and is alleged to have fabricated his claims against President Joe Biden."[6] (*Id.*)  Hackett continues,

> Moreover, he has had several business dealings with an associate Mr. Boris Nayflish [footnote omitted], whose name has already appeared in discovery turned over to the Defendant in the parallel criminal case to the matter before this Court. Additionally, Mr.  Smirnov has several ties to several foreign countries such as Israel, Ukraine, Austria, and Czech Republic, among others. Upon the Defendant's review of the Commission's trading data for the relevant stock to this matter, several individuals are listed trading the relevant stock from brokerage accounts located in these foreign countries during the relevant time period.

(*Id.* at 2–3.)  Further, "the proposed discovery seeks to obtain relevant trading information from Smirnov and the 11 other individuals to adequately present a defense to the Plaintiff's

---

Blue Sheet Data regarding WRIT Media Group .  .  . from January 1, 2015 – January 1, 2019," and interrogatories to be directed to third party David Wolfson.  (ECF No. 212 at 3.)

[6] The Court takes judicial notice of the Indictment in *United States v. Alexander Smirnov*, Case No. 2:24-cr-00091-ODW (C.D. Cal. Feb. 14, 2024), ECF No. 1.  *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.  2006) (the Court may take judicial notice "of court filings and other matters of public record"). The indictment alleges that Smirnov provided false derogatory information to the FBI about President Biden and Hunter Biden in connection with the Burisma matter.

securities fraud cause of action." (ECF No 212 at 4.)  Hackett contends that there is good cause to reopen discovery based on the above.  (*Id.* at 5.)  Specifically, he argues that he "seeks discovery to identify Smirnov's involvement in the subject security HVST/ASNT" (*Id*. at 4) and is entitled to pursue fact discovery relating to the "potential trading of the relevant stock 'HVST' and 'ASNT' by either Mr. Smirnov himself, or by one or more of his associates, recorded conversations with or about the cooperating witness and/or the Defendant," as such discovery is "highly relevant to the Defendant's defense." (ECF No. 193 at 3.)

Addressing the question of diligence, Hackett argues that he was not made aware of Smirnov's identity as an FBI CHS until March 2024.  (ECF No 212 at 4.)  Hackett was aware of the involvement of an "Alex" with respect to Hackett's criminal case but did not know his full identity.  (*Id.*)  Hackett maintains that after he learned Alex Smirnov's identity, he acted with immediate due diligence by contacting the SEC and the Department of Justice to seek relevant evidence.  (*Id.*)

The SEC opposes Hackett's motion.  (ECF No. 195.)  The Commission contends that the motion "is an untimely and thinly veiled attempt to obtain disclosure that [Hackett] apparently believes may be relevant to [his] [c]riminal [c]ase." (*Id.* at 5.)  The Commission also opposes the motion on the basis that information relating to the individuals identified by Hackett in his motion is not relevant to this case.  (*Id.*)  Specifically with respect to Mr. Smirnov, the SEC argues that the discovery is irrelevant because Smirnov was involved in a security called WRIT, while the case against Hackett arises out of the manipulation of ASNT (formerly HVST) stock.  (ECF No. 213 at 4–6.)  The SEC sates, "Based on the documents in the SEC's investigative file for this matter and on consultation with the United States Attorney's Office, the SEC is unaware of any involvement by Smirnov with respect to ASNT." (*Id*. at 4–5.)

Further, the SEC argues that the requested discovery is irrelevant because liability in this case is established by the collateral estoppel impact of Hackett's conviction in the criminal case, which was based upon the same factual allegations.  (ECF No. 213 at 3-4.)

18-cv-1530-WQH-JLB

In addition, the SEC argues that Hackett has not sufficiently demonstrated diligence because he did not serve any document requests during the discovery period. (ECF No. 195 at 6.)  The SEC points out that, aside from Mr. Smirnov, Hackett seeks discovery related to 11 individuals that traded ASNT stock plus Liana Millhouse, David Wolfson, and Boris Nayflish, all of whom were identified in his criminal case, and some of whom were "featured prominently." (*Id*. at 6, ECF No. 213 at 6.)  The SEC further argues that Hackett has not offered an explanation of his lack of diligence as to discovery related to any of these individuals. (*Id*.)  With respect to discovery related to Cem Can, the SEC argues that Hackett has offered no explanation of either relevance or diligence.  (*Id*. at 6–8.)  Finally, with respect to Mr. Smirnov, the SEC argues that Hackett has failed to establish due diligence because he had received in discovery the two calls between "Alex" and himself and could have timely propounded discovery about the not-fully-identified "Alex" and/or WRIT. (*Id*. at 7.)

**B.** **Analysis**

For the reasons set forth below, as to most of the discovery sought by Hackett, he has established neither relevance nor diligence and has not otherwise sufficiently supported his request to reopen discovery.  The Court addresses separately Hackett's request to reopen discovery in order to obtain formal confirmation that Alexander Smirnov is the "Alex" that Defendant spoke with via recorded telephone, to obtain any discovery within the custody and control of the SEC of any involvement of Smirnov in the manipulation of ASNT (formerly HVST) stock, and to take Mr. Smirnov's deposition.[7]

The Court largely agrees with the SEC's arguments opposing Hackett's motion to reopen discovery.  First, as the Commission argues, this is not the appropriate forum to litigate whether the Department of Justice should have turned over information relating to

---

[7] As discussed below, the SEC confirms its understanding that the "Alex" that Defendant spoke to in recorded telephone calls is indeed Mr. Smirnov and asserts that "this issue is not in dispute[.]" (ECF No. 213 at 7.)

Mr. Smirnov, or the other individuals identified by Hackett, in the criminal action. Any challenges to his criminal proceedings must be sought through his criminal case or other proper proceedings. *See* Fed. R. Crim. P. 32, 33–38; Fed. R. App. P. 4–5; 28 U.S.C. § 2241 et seq. Indeed, criminal counsel, on behalf of Hackett, sent a letter to the U.S. Attorney's Office in San Diego, the prosecuting agency, to request information about Smirnov in connection with Hackett's criminal action. (ECF No. 196-3 (Dunnigan Decl., Ex. C, [letter from Carlton F. Gunn, Esq. to U.S. Attorney's Office dated Apr. 4, 2024]).) In that letter, counsel requests any recordings, reports, or notes of any contacts between Smirnov and Hackett on the basis that they are potentially exculpatory and would have been relevant at Hackett's criminal trial. (*Id.*) The letter requests a prompt response due to an upcoming deadline to file a motion for a new criminal trial based on new evidence. (*Id.*)

Second, in this civil case, parties may only obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Hackett has not sufficiently demonstrated that most of the discovery he seeks is material to this action. The SEC did not identify Smirnov, Nayflish, or any of the other individuals listed by Hackett in its initial disclosures in this action "because the Commission did not–and does not–regard them as 'likely to have discoverable information that the Commission may use to support its claims in this action.'" (ECF No. 195 at 6; *see also* ECF No. 196 at 1 (Dunnigan Decl. ¶ 2, ("The Commission's initial disclosures do not identify any of the 13 individuals referenced in the Motion.")); Fed. R. Civ. P. 26(a)(1) (requiring parties to provide identifying information "of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses[.]"). Moreover, Hackett's motion to reopen discovery provides no support beyond mere speculation that the individuals named in his motion are relevant to this case. (*See generally* ECF No. 193.)

Third, Hackett has not shown that he has acted diligently with respect to discovery in this matter. Discovery had been concluded for five months by the time Hackett requested

the information he currently seeks and, according to the SEC, Hackett did not issue any document requests during the discovery period. (ECF No. 195 at 6.) This Court previously found that Hackett had not sufficiently demonstrated diligence during the discovery period. (*See* ECF No. 151 at 3.) Although Hackett contends that he did not learn of Mr. Smirnov's identity until he read media reports following Smirnov's February 14, 2024, indictment in the Central District, he acknowledges receiving a recorded call with a Russian man named "Alex" from the Government.[8] (Dunnigan Decl., Ex. B, ECF No. 196-2 [email from Hackett to SEC's counsel dated Mar. 25, 2024].) Hackett also acknowledges that Boris Nayflish's name was revealed in discovery in his criminal case. (ECF No. 193 at 2.) The SEC asserts, and Hackett does not dispute, that the identities of the other individuals mentioned in Hackett's requested discovery were also known to Hackett since at least the time of his criminal prosecution. (*See* ECF No. 195 at 6; ECF No. 213 at 6.) Yet neither "Alex" nor the fully named individuals are set forth in Hackett's portion of the Joint Discovery Plan as witnesses to be deposed or as individuals about whom he wished to seek discovery (ECF No. 98), and he waited until well after the close of discovery to seek any discovery regarding these individuals. This does not demonstrate diligence. "If the party seeking the modification 'was not diligent, the inquiry should end[.]'" *Zivkovic*, 302 F.3d at 1087 (quoting *Johnson*, 975 F.2d at 609).

Consideration of the *City of Pomona* factors leads the Court to the same conclusion. *See City of Pomona*, 866 F.3d at 1066. Although trial is not imminent, the SEC opposes the request to reopen discovery, the SEC would be prejudiced by the delay that would occur if discovery were reopened—especially in light of the age of the case, Hackett was not diligent in seeking discovery within the schedule issued by the Court, and the current record before the Court does not show that the information sought is likely to lead to relevant evidence. *See id.*

---

[8] According to the SEC, this recording was provided to Hackett "years ago" as part of discovery in his criminal case. (ECF No. 195 at 6.)

1    Based on the above, the Court finds that Hackett has not demonstrated good cause
2    to modify the scheduling order and reopen discovery for most of what he seeks.

3    Even with respect to the discovery related to Mr. Smirnov, Hackett has made only
4    the thinnest demonstration of potential relevance.  Specifically, because Mr. Smirnov's
5    contact with Hackett was in the context of sales related to a different securities fraud
6    scheme, it is highly unlikely that discovery related to Smirnov will yield anything relevant.
7    However, where, as here, (1) the SEC has acknowledged that the prior criminal
8    investigation targeting Hackett resulted in recorded calls between Hackett and Smirnov,
9    acting as a CHS; and (2) Smirnov has been charged with providing false information to the
10   FBI in another matter, the Court is inclined to give wider latitude.  In addition, with respect
11   to the discovery related to Mr. Smirnov, Hackett has offered a plausible proffer of
12   diligence: that Smirnov was not previously fully identified, and Hackett only recently
13   learned that the FBI has accused him of dishonesty.  (*See* ECF No. 193 at 2.)  Therefore,
14   the Court will reopen discovery for a brief period for the purpose of Hackett seeking to
15   obtain very specific, limited discovery regarding Hackett.

16   The SEC has already acknowledged that, to the best of their knowledge, the "Alex"
17   in the recorded calls with Hackett is Alexander Smirnov. (ECF No. 213 at 7.)  Discovery
18   will be reopened, and: 1) Hackett will have until **July 15, 2024**, to propound either an
19   interrogatory or a request for admission to elicit this fact formally from the SEC;  2) Hackett
20   will have until **July 15, 2024**, to propound a request for production of documents for any
21   documents the SEC has in its possession, custody or control related to Mr. Smirnov's
22   involvement in the manipulation, purchase, or sale of ASNT (formerly HVST) stock[9]; 3)

---

[9]  The Court notes that the SEC asserts, "Based on the documents in the SEC's investigative file for this matter and on consultation with the United States Attorney's Office, the SEC is unaware of any involvement by Smirnov with respect to ASNT" and "based  upon a preliminary review, none of the documents in the SEC's investigative file containing mention of Smirnov relate to ASNT . . . ."  (ECF No. 213 at 4–5.)

Hackett shall have **60 days** to endeavor to take the deposition of Alexender Smirnov.

Because the likelihood of relevant information being obtained from such a deposition is so low, because Hackett has not been diligent in pursuing discovery in this matter, and because of the age of this case, if Mr. Smirnov cannot be located, served, and deposed within this window, discovery will reclose, and the case will proceed without that deposition.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Hackett's Motion to Reopen Fact Discovery [ECF No.  93] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED**.

Dated:  July 1, 2024

Hon. Jill L. Burkhardt
United States Magistrate Judge