FILED
JUL 22 2024
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ________ DEPUTY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

SECURITIES EXCHANGE COMMISSION,

Plaintiff,

vs.

GANNON GIGUIERE, et al.,

Defendants.

Case No.: 18-cv-01530-WQH-JLB

**DEFENDANT'S *IN LIMINE* MOTIONS TO:**

**(1) EXCLUDE ROBERT FARRILL'S SALES OF ASNT**
**(2) EXCLUDE CALLS BETWEEN MICHAEL FORSTER AND VIKRAM KHANNA**
**(3) EXCLUDE LIANA MILLHOUSE'S TEXT MESSAGES**
**(4) ADMIT SUMMARIES AND CHARTS**
**(5) ADMIT ALEXANDER SMIRNOV'S TRADES OF WRIT**

**ORAL ARGUMENT: AUGUST 26, 2024, BEFORE HON. WILLIAM HAYES**

## I. Motion to Exclude Robert Farrill's Sales of Arias Intel Corp. ("ASNT")

It is anticipated that Plaintiff will seek to introduce Robert Farrill's sell orders of ASNT. (Exhibit A) However, the defendant seeks to exclude such evidence under Federal Rules of Evidence 401, as they are not relevant, due to the sell orders occurring between March 7, 2018, and April 2, 2018. The time period that these sales occurred fall outside of the relevant period, February 2017 through January 2018. (Dkt. 92 12, 16) Since the period of Robert Farrill's sales occur after the relevant period of the Complaint, these sales are not a fact of consequence in determining the action. Moreover, it is anticipated that Plaintiff intends to introduce such evidence to falsely portray that Mr. Farrill's shares were for the benefit of the defendant. However, the Plaintiff cannot establish that these sales were for the benefit of the

defendant during the relevant period, nor does such evidence of the sales alone establish a benefit for the defendant at any period in time. Therefore, the sales of Mr. Farrill do not have any tendency to make a fact more or less probable. Accordingly, the sales of Mr. Farrill should be excluded under FRE 401.

Additionally, if the Court finds Mr. Farrill's sales to be relevant, the Court should exclude such evidence under FRE 403. Admitting sales outside the relevant period and by a third-party individual, who is not a party to this action would certainly unfairly prejudice the defendant, mislead the jury, and confuse the issues. Mr. Farrill is not a party to the Plaintiff's action. Thus, admitting his sales of ASNT would very likely prejudice the defendant in that the jury would be mislead to believe that Defendant had control or the ability to conduct such trades. Moreover, since the sales occurred outside of the relevant period of the Complaint, consideration of such sales would prejudice the defendant by attempting to hold him accountable for actions outside of the scope of the complaint. Accordingly, the Court should exclude the sales of Mr. Farrill under FRE 403.

Finally, Mr. Farrill's sales should be excluded under FRE 801, since the sales constitute an out-of-court statement that is anticipated to be offered for the truth of the matter asserted. Mr. Farrill is not mentioned whatsoever in the Plaintiff's Complaint. As stated previously, Mr. Farrill is not a party to this action. As such, admitting such evidence without the testimony of Mr. Farrill himself is the definition of hearsay evidence. Moreover, included in the relevant discovery turned over to the defendant is a recorded voice message left by Mr. Farrill to the Securities and Exchange Commission. As such, the Plaintiff has the means of contacting Mr Farrill, yet chose to not follow-up with Mr. Farrill, nor take his deposition for this matter. Accordingly, the Court should exclude the hearsay sales of Mr. Farrill under FRE 801.

## II. Motion to Exclude Recorded Calls Between Michael Forster and Vikram Khanna

It is anticipated that the Plaintiff will seek to introduce recorded phone conversations between Mr. Forster and Mr. Khanna to show the origins of the disputed scheme. The Court should exclude such evidence under FRE 403 because the recorded calls' probative value is substantially outweighed by the danger of unfair prejudice. Mr. Forster is the cooperating witness in the relevant investigation of the defendant, who recorded numerous conversations with Defendant and other relevant parties to this action. It is likely that the Plaintiff seeks to admit the recorded calls between Mr. Forster and Mr. Khanna to show the origins of the alleged promotion of ASNT. However, these recorded calls are likely to inaccurately show that the defendant approached Mr. Forster and his associate Mr. Khanna to promote ASNT, when in actuality, it was Mr. Forster and Mr. Khanna would sought out the defendant. For example, the first recorded call provided in discovery to the defendant is a call between Mr. Forster and Mr. Khanna on October 25, 2017. It is clear from the first sentences spoken between the two, that this was not the first time they have spoken:

"*[PHONE RINGING]*

*VK: Hi, sunshine.*

*CHS: Hey, how are ya?*

*VK: I'm okay.*

*CHS: Okay, HV-what was it? HV— VK: Hotel-Victor-Sierra-Tango. CHS: Sierra-Tango.*" (3-18-cr-03072-TWR-1, Government's Trial Exhibit 001)

Moreover, Exhibit A are excerpts from an FBI created transcript of the recorded call. The transcript of the call contains a crucial error in the following statement:

> "*CHS: Okay, so what do they want to do?*
>
> *VK: Well I told'em, **if** they want to work on this as quickly as possible, then, you know, wait for the-the Yeungling deal...*" (3-18-cr-03072-TWR-1, Government's Trial Exhibit 001)

The "error" in the transcript shows the intent in introducing this call into evidence. It is anticipated that the Plaintiff will seek to introduce this call to show that

the defendant approached Mr. Forster and Mr. Khanna to promote ASNT. Adding the preposition "if" to this particular sentence changes the entire meaning of the sentence. With the added word, it appears as though the defendant was seeking to have to Forster and Khanna promote the stock. However, remove the word, and restore the conversation to how it was recorded, the "they" referenced by Khanna is in fact Mr. Forster, the individual who was seeking out deals. Additionally, this call taints all of the recorded calls between Khanna and Forster since it is misleading in terms of describing the intent of the parties in the relevant matter.

Any probative value of admitting this call, along with all of the recorded calls between Forster and Khanna is likely outweighed by the unfair prejudice to the defendant by misleading the jury into believing that it was the defendant who sought out Khanna and Forster to promote ASNT in furtherance of any scheme. Subsequently admitting the calls between Khanna and Forster following the October 25th call are also likely to mislead the jury because the context of Forster and Khanna's dealings with ASNT are misconstrued. Therefore, the Court should exclude the calls between Forster and Khanna under FRE 403.

Additionally, the calls between Forster and Khanna should be excluded under FRE 803 as they are out-of-court statements, anticipated to be offered for the truth of the matter asserted.

**III. Motion to Exclude Liana Millhouse's Text Messages With Hackett**

It is anticipated that the SEC will seek to introduce several text messages between Liana Millhouse and the defendant. Ms. Millhouse is not mentioned in the plaintiff's Complaint, but was brough up during the deposition of the defendant. The Court should exclude these text messages under FRE 801 as the texts constitute an out of court statement, and it is anticipated that the SEC will seek to admit these texts messages to falsely assert that the defendant engaged in a "match trading" scheme. However, even if Ms. Millhouse were to testify at trial, the text messages would not clear the second level of hearsay. In an interview with the FBI on July 10, 2019, Ms.

Millhouse confirmed that "she had an intermediary communicating between Hackett and the call rooms…Jonathan Nelson was one intermediary…" (Exhibit B) Moreover, the statement by Ms. Millhouse to the FBI infers that there were other individuals besides Mr. Nelson acting as intermediaries in communicating with the defendant. Thus, this would require identifying and locating each of these individuals to testify to the content of the text messages. Therefore, because the text messages constitute an out of court statement anticipated to be offered for the truth of the matter asserted, and the fact that Ms. Millhouse was not the individual sending and receiving these test messages, the messages constitutes hearsay within hearsay to which no exception applies.

## IV. Motion to Admit Summaries and Charts

The defendant intends to introduce charts and other records summarizing the content of voluminous records that cannot be conveniently examined in court. Summaries of the SEC Bluesheet Data will help the jury to review and comprehend the individuals, not the defendant, that were responsible for illegal trading of ASNT securities. The defendant will provide the Plaintiff with advance copies of the summaries it intends to use, along with the Bates numbers for each of the independently-admissible records used to create each summary or chart.

The summaries and charts the defendant seeks to introduce are admissible under FRE 1006, because they will clarify voluminous writings and recordings that are admissible in evidence but cannot be conveniently examined in court. Moreover, all of the defendant's summary exhibits will consist of information taken from admissible but voluminous records that need not be admitted in evidence themselves.

## V. Motion to Admit Alexander Smirnov Trades of "WRIT"

The defendant intended to introduce at trial evidence of Alexander Smirnov's trades of Writ Media Group ("WRIT"). The Court should admit this evidence under Federal Rules of Evidence 404(b)(2) because this evidence may be admissible for the purpose of proving motive, opportunity, intent, and knowledge.

In the parallel criminal case, the Government produced in discovery a recorded call between Defendant, a now known to be CHS Smirnov, CHS Forster, and "Denis" (an associate of CHS Smirnov). (Exhibit C) The conversation surrounds the "deal" "WRIT," and a transcript created by the FBI, along with the audio recording of the call (recorded by CHS Forster) was produced to the Defendant in discovery. During the call, CHS Smirnov discusses CHS Forster and "his guys," who ultimately was the FBI, promoting WRIT.

On September 4, 2019, the Government, in its' Motion in Limine to "Admit the conspirators' references to other penny stock "deals" in describing the ASNT scheme," which included WRIT, stated the following:

> *"When discussing the contours of the ASNT conspiracy, the conspirators and Forster occasionally spoke about other deals as reference points.* ***These references to other deals are intrinsic evidence of the charged ... the evidence should be admitted because it shows defendants' knowledge, plan, and modus operandi surrounding pump-and-dump schemes."*** (3-18-cr-03072-TWR-1, Dkt. No. 172, p. 2, 19-28; 3:1-4).

Moreover, the Government underscores the materiality of the 404(b) evidence:

> *"The conspirators' references to other deals to describe aspects of the ASNT deal* ***constitute direct evidence of the*** *conspiracy and* ***securities fraud alleged in the indictment."*** (3-18-cr-03072-TWR-1, Dkt. No. 172, p.8:5-8)
>
> *"Dumping shares of* ***ASNT***, *...* ***WRIT*** *into an undercover agent's purported broker network. Hackett and Forster often discussed these stocks collectively in fluid conversation. Because the conspirators discussed each of these stocks in connection with, and to illuminate, the conspirators' plans and* ***actions with respect to ASNT, they are intrinsic evidence of the crimes for which Defendants are charged..."*** (3-18-cr-03072-TWR-1, Dkt. No. 172, p.8:21-27).
>
> *"... Such intrinsic evidence includes evidence constituting a part of the transaction that serves* ***as the basis for the criminal charge****. ... Intrinsic*

*evidence, however, also includes evidence that is necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime. ...* ***This is because the jury cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge****. ... This includes circumstantial evidence explaining the general nature of a defendant's business activity and* ***providing a context*** *in which the transactions at issue took place."* (3-18-cr-03072-TWR-1, Dkt. No. 172, p. 9:2-8)

Furthermore, the Government connects the references to WRIT with ASNT in stating that discussions about WRIT provide evidence of the Defendant's requisite state of mind necessary for the jury to reach a verdict at trial:

*"The conspirators discussed the contours of their agreement –* ***the same agreement that forms the basis for the conspiracy alleged in count 1 of the Indictment*** ***– by referring to these deals****.* ***Their discussion of these deals is therefore inextricably intertwined with the ASNT scheme****. Introduction of these conspiratorial discussions will* ***provide the jury with "knowledge of the time, place, and circumstances" surrounding the ASNT scheme, and allow for a "coherent and comprehensible story regarding the commission of the crime****... "* (3-18-cr-03072-TWR-1, Dkt. No. 172, p. 9:11-18)

*"The evidence undoubtedly proves several material points – Defendants' intent, knowledge of, and plan to perpetrate the ASNT scheme, the scope of their conspiratorial agreement, and their modus operandi surrounding pump-and-dump schemes...* ***Second, the discussions were not remote in time. In fact, the discussions were contemporaneous with the conspiratorial discussions about ASNT****. This is exactly why the United States seeks to introduce this evidence; the references to other deals were made to articulate, explain, and illuminate the ASNT scheme. As for the deals themselves, recorded calls make clear that Hackett was working on the ...* ***WRIT deals during the same period***

***he was engaged in active discussions regarding the ASNT scheme, i.e., October 2017 through at least January 2018."*** (3-18-cr-03072-TWR-1, Dkt. No. 172, p. 10:4-6,11-17)

Thus, as heavily argued by the Government, discussions of WRIT are highly material to the alleged manipulation of the ASNT stock, as alleged against the defendant in the Complaint. Specifically because CHS Smirnov is captured on a recorded phone call turned over in discovery having CHS Forster "promote" WRIT by having the FBI conduct buy orders of the stock. Defendant and CHS Smirnov's interactions and CHS Smirnov's trades of WRIT would go directly to whether the defendant possessed the requisite knowledge, opportunity, motive, and intent to sell his stock in connection with any proposed sales, and should be admitted under FRE 404(b)(2).

Dated: July 15, 2024

/s/ Andrew Hackett

*pro se*

andrewyge@gmail.com