UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>GANNON GIGUIERE, OLIVER-BARRET LINDSAY, ANDREW HACKETT, KEVIN GILLESPIE, and ANNETTA BUDHU,<br><br>　　　　　　　　　　Defendants. | Case No.:  18-cv-1530-WQH-JLB<br><br>**ORDER** |

HAYES, Judge:

The matters before the Court are the Motion for Summary Judgment as to Defendant Andrew Hackett filed by Plaintiff the Securities and Exchange Commission (ECF No. 229) and the crossclaims asserted by Defendant Andrew Hackett against Defendants Kevin Gillespie and Annetta Budhu (ECF No. 144).

## I.　PROCEDURAL BACKGROUND

On July 6, 2018, the Securities and Exchange Commission ("SEC") filed a Complaint against Defendants Gannon Giguiere ("Giguiere"), Oliver-Barret Lindsay ("Lindsay"),

1

Andrew Hackett ("Hackett"), Kevin Gillespie ("Gillespie"), and Annetta Budhu ("Budhu") (collectively, "Defendants") alleging federal securities laws violations.[1] (ECF No. 1.)

On the same day, the United States Attorney's Office for the Southern District of California (the "Government") moved to unseal a two-count indictment (the "Indictment") charging Hackett and two other defendants, Gillespie and Budhu (collectively, the "Relevant Civil Defendants") with counts of conspiracy and securities fraud. *See United States of America v. Hackett et al.*, No. 18-cr-3072-TWR-1 (the "Criminal Case"). On August 21, 2018, the Government moved to intervene in and stay this action pending the resolution of the parallel Criminal Case. (ECF No. 20.) In its motion, the Government explained that the Criminal Case and this action "overlap almost entirely in terms of charged conduct, defendants…, witnesses, and evidence; the cases therefore cannot realistically proceed independent of one another." *Id.* at 2. On October 24, 2018, the Court granted the Motion to Intervene and Stay Proceedings. (ECF No. 44.) On June 16, 2022, the Court issued an order lifting the stay after judgment was entered against the defendants in the Criminal Case. (ECF No. 76.)

On August 5, 2022, the SEC filed a First Amended Complaint against Defendants, which supplemented the allegations contained in the original Complaint. (ECF No. 92.) On April 7, 2023, the SEC filed the operative Second Amended Complaint ("SAC"). (SAC, ECF No. 136.) As relevant here, the SAC alleges that Hackett, along with Gillespie and Budhu, conducted a fraudulent pump and dump scheme[2] in the common stock of Arias

---

[1] Final judgments have been issued as to Defendants Giguiere (ECF No. 220), Lindsay (ECF No. 185), Gillespie (ECF No. 90), and Budhu (ECF No. 126), leaving Hackett as the only pending Defendant. The operative Second Amended Complaint outlines allegations of three related fraudulent schemes—the "KVMD Scheme," the "ASNT Scheme," and the "ESSI Scheme." (SAC ¶ 1.) The allegations that involve Hackett concern only the ASNT scheme, which he is alleged to have participated in with co-conspirators Gillespie and Budhu. *Id.* ¶¶ 10–16. As such, this Order will discuss only the procedural and factual background related to the ASNT scheme.

[2] A pump and dump scheme consists of:

Intel Corp. ("ASNT") in violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5(a) and (c) promulgated thereunder. *Id.* ¶¶ 10–16, 23 (citing 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(a) & (c)).

On June 15, 2023, Hackett filed an Answer to the SAC and asserted crossclaims against co-defendants Budhu and Gillespie. (ECF No. 144.) Fact discovery in this action began on the same day and initially concluded on October 27, 2023. (*See* ECF No. 151 at 4.) On April 10, 2024, Hackett filed a Motion to Reopen Discovery "for the limited purp[o]se of allowing discovery regarding Alexander Smirnov ("Smirnov"), a Confidential Human Resource ("CHS") for the Federal Bureau of Investigation ("FBI") and his involvement with the Defendant in this matter before the Court." (ECF No. 193 at 1.) On July 1, 2024, the Court granted Hackett's motion in part, providing Hackett with sixty days to take Smirnov's deposition. (ECF No. 222.) On August 6, 2024, Mr. Smirnov provided a sworn affidavit responding to written questions presented by Hackett and thereby concluding fact discovery in this action. (ECF No. 232-1.)

On July 25, 2024, the SEC filed a Motion for Summary Judgment as to Defendant Andrew Hackett, contending that Hackett's conviction in the Criminal Case collaterally estops him from contesting his liability for securities fraud in this action. (ECF No. 229 at 7.) On August 19, 2024, Defendant Hackett filed a Response in opposition to the Motion for Summary Judgment. (ECF No. 234.) On August 27, 2024, the SEC filed a Reply. (ECF No. 236.)

---

> [A] group of individuals who control the "free trading" shares of an issuer with a thinly-traded stock ... inflate the issuer's share price and trading volume through, among other things, engaging in wash and matched trading, issuing false or misleading press releases, or paying for stock promotions. When the issuer's share price reaches a desirable level or target price, the individuals "dump" their shares into the buying volume generated during the "pump" phase for substantial financial gain.

(SAC at 3 n.1.)

## II. FACTUAL BACKGROUND

### A. Allegations in the Second Amended Complaint

In 2016, Gillespie became ASNT's majority shareholder after Budhu brokered a stock sale from the company's previous sole officer to him. (SAC ¶ 69.) Gillespie then took on the roles of CEO, president, and chairman. *Id.* ¶ 70. In February 2017, he initiated the "Advisory Agreement" with Budhu and her nominee, Baywall Inc. ("Baywall"),[3] under which ASNT paid Budhu/Baywall 200,000 shares for consulting services. *Id.* ¶ 72. In August 2017, Baywall sold the shares to Hackett's nominee, FreeLife Investments, Inc. ("FreeLife"), at a significant premium to its then trading price. *Id.* ¶¶ 74–75. Hackett made multiple false statements in a "Seller's Representation Letter" to facilitate this sale, claiming he was unaware of any material, non-public information regarding ASNT, despite knowing that he, Gillespie, and Budhu intended to manipulate the stock. *Id.* ¶ 79. Additionally, in August of 2017, Gillespie caused ASNT to issue a $300,000 convertible promissory note to FreeLife, which enabled Hackett to convert it into 750,000 shares of ASNT stock. *Id.* ¶¶ 80–82.

By October of 2017, the Relevant Civil Defendants had agreed to enter a scheme to transfer ASNT stock to Hackett, promote it on TheMoneyStreet,[4] and liquidate the stock holdings for their benefit after creating a misleading appearance of active trading in ASNT. *Id.* ¶¶ 68–110. In October of 2017, Budhu was introduced to an individual who she was told could promote ASNT on TheMoneyStreet.com, unaware that this individual was a confidential witness for the FBI who planned to record conversations with the defendants. *Id.* ¶ 84. Initial recorded calls indicated discussions about the ASNT shares controlled by the Relevant Civil Defendants and planned promotional efforts, including a series of press

---

[3] "A 'nominee' in this context refers to a person or entity into whose name securities or money is transferred to facilitate transactions like stock sales while seeking to mask the identity of the beneficial owner of the securities or money." (SAC ¶ 41 n. 4.)

[4] TheMoneyStreet.com is a stock promotion website controlled by co-defendant Giguiere. *Id.* ¶ 8.

releases to generate interest in the stock. *Id.* ¶¶ 85–91. On a recorded call in December of 2017, Budhu, Hackett, and the confidential witness agreed that Hackett would sell ASNT shares until the stock reached a target price of $5.00 per share. *Id.* ¶ 93.

When the planned promotion efforts fell through, Hackett shifted to a matched trading scheme to create a misleading appearance of active trading in ASNT. *Id.* ¶ 96. The confidential witness introduced Hackett to an undercover FBI agent ("UC") posing as the ringleader of a group of corrupt stockbrokers. *Id.* ¶ 97. This UC claimed to have a network of corrupt stockbrokers willing to fraudulently purchase ASNT stock in customer accounts in exchange for a 30% kickback. *Id.* From December 22, 2017, to January 18, 2018, Hackett sold over 14,000 shares of ASNT stock in matched trades coordinated with the UC, paying a kickback for some of the trades. *Id.* ¶ 96. Hackett coordinated:

> trading with the UC in phone calls and encrypted message chats with the cooperating witness, in which he agreed to place sale orders of ASNT in substantially the same size, at the same time, and at substantially the same prices at which he understood the UC was placing his buy orders.

*Id.* ¶ 99. These allegations are nearly identical to the allegations in the Criminal Case. (ECF No. 20 at 2.)

### B. The Criminal Case

On July 26, 2021, the jury trial commenced against Hackett in the parallel Criminal Case. (ECF No. 230-92 at 2.) Hackett was represented by counsel. *Id.* During the five-day trial, the Government presented testimony from multiple witnesses, including Gillespie and the confidential witness. (ECF Nos. 230-92–230-109.) The Government also presented documentary evidence, including telephone recordings, emails, and text messages, which implicated Hackett in the scheme. *Id.*

The Government argued that Hackett had participated in all three stages of the pump and dump scheme: controlling the stock, pumping up the stock, and dumping the stock. (ECF No. 230-92 at 6–8.) The Government also argued it had proven intent, a necessary element to a securities fraud violation, by providing evidence of Hackett's efforts to

conceal his actions through offshore brokerage accounts and his use of encrypted messaging apps. (ECF No. 230-108 at 42–44.)

On August 2, 2021, the jury returned a guilty verdict against Hackett, finding him guilty of conspiracy to commit securities fraud and securities fraud. (ECF No. 230-3 at 2.) After the trial, Hackett filed a motion for a new trial, motion for a judgment of acquittal, and a supplemental motion for a new trial (Criminal Case, ECF Nos. 315, 316 & 388), all of which the court denied (Criminal Case, ECF No. 412). On June 10, 2022, the court entered judgment against Hackett in the Criminal Case, sentencing him to nearly four years of imprisonment and three years of supervised release (ECF No. 230-4 at 3–4) and ordering him to pay $67,184.91 in restitution. (ECF No. 230-5 at 3.)

On April 3, 2023, Hackett filed a notice of appeal of his criminal conviction to the Ninth Circuit. (ECF No. 230-6.) The appeal remains pending. On July 5, 2024, Hackett filed a motion for new trial based on newly discovered evidence and prosecutorial misconduct. (ECF No. 230-7.) The motion remains pending.

### III. LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970).

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 322, 324. The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 256.

## IV.  DISCUSSION

### A. Legal Standard for the Underlying Securities Fraud Claims

Section 10(b) and Rules 10b-5(a) and (c) promulgated thereunder make it unlawful, "to employ any device, scheme, or artifice to defraud" or "to engage in any act, practice, or course of business which operates or would operate as fraud or deceit upon any person" in connection with the purchase or sale of any security. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(a) & (c). Both the Criminal Case and this action are premised on Hackett's violations of Section 10(b) and Rules 10b-5(a) and (c). In the Criminal Case, the court instructed the jury that the Government was required to prove each of the following elements beyond a reasonable doubt to find Hackett guilty of securities fraud:

> First, the defendant willfully used a device or scheme to defraud someone, made an untrue statement of a material fact, failed to disclose a material fact that resulted in making the defendant's statements misleading, or engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person;
>
> Second, the defendant's act was undertaken, statement was made, or failure to disclose was done in connection with the purchase or sale of Arias Intel Corp. securities;

Third, the defendant directly or indirectly used the interstate wires in connection with this act, making this statement, or this failure to disclose; and

Fourth, the defendant acted knowingly.

(ECF No. 230-2 at 24.) In convicting Hackett, the jury found that the Government had proven each element beyond a reasonable doubt.

## B. Collateral Estoppel

The doctrine of collateral estoppel prevents the relitigation of issues that have already been decided, provided that the previous judgment was based on the same underlying conduct. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). Courts have held that "a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the government in the criminal case," because the government's burden of proof in the criminal context is greater than in the civil context. *SEC v. Reyes*, No. C-06-04435, 2008 WL 3916247, at *2 (N.D. Cal. Aug. 25, 2008) (quoting *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978)); *see also Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S 558, 568–69 (1951) ("[i]t is well established that a prior criminal conviction may work an estoppel in favor of the Government in a subsequent civil proceeding."); *SEC v. Braslau*, No. 14-cv-01290-ODW, 2016 WL 5922666, at *1 (C.D. Cal. May 13, 2016) ("When a defendant has already been convicted of criminal securities fraud, courts have not hesitated to apply the doctrine of collateral estoppel to civil securities fraud violations to bar re-litigation of factual issues necessarily decided in the criminal case.").

To invoke the doctrine, the Plaintiff must show:

> (1) the prior conviction [was] for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must necessarily have been decided at the criminal trial; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior trial.

*Braslau*, 2016 WL 5922666, at *3 (citing *SEC v. Hilsenrath*, No. 03-03252 WHA, 2008 U.S. Dist. LEXIS 50021, at *11 (N.D. Cal. May 30, 2008)).

The SEC contends that, "[s]ummary judgment on the SEC's securities fraud claim against Hackett is appropriate under the doctrine of collateral estoppel in light of his conviction in the Criminal Case, which is based on the same underlying conduct that is alleged in the SEC's civil complaint." (ECF No. 229-1 at 21.) Specifically, the SEC contends that the elements required to invoke the doctrine of collateral estoppel "are easily established here with respect to Hackett." *Id.* at 22.

Hackett contends that "[s]ummary judgment against Hackett based on collateral estoppel is inappropriate due to the SEC's failure to meet the four-factor test. Specifically, the SEC cannot establish that 'there must have been a full and fair trial to prevent convictions of doubtful validity from being used.'" (ECF No. 234 at 15 (quoting *United States v. Real Prop. Located at Section 18*, 976 F.2d 515, 518 (9th Cir. 1982)).) Hackett's opposition focuses exclusively on whether his conviction in the Criminal Case was appropriate, such that collateral estoppel can be applied to determine liability in this action.

### 1. Elements One, Three & Four:

The parties do not dispute whether the conviction in the Criminal Case was for a serious offense such that Hackett was adequately motivated to fully litigate the charges. The implications of a conviction were serious for Hackett, as he was confronted with severe penalties and was ultimately sentenced to nearly four years in prison. *See, e.g.*, *Holguin v. City of San Diego*, 135 F. Supp. 3d 1151, 1161 (S.D. Cal. 2015) (finding that, "[t]he fact that Plaintiff faced imprisonment up to 6 months for the charge demonstrates that the prior conviction was a serious offense that Plaintiff was motivated to fully litigate.") Additionally, there is no dispute as to whether the issue on which the prior conviction is offered was necessarily decided at the criminal trial nor whether Hackett was in fact a party to the prior litigation. In both actions, Hackett was alleged to have violated Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) promulgated thereunder and this issue was

"necessarily decided" in the Criminal Case when the jury found Hackett guilty of securities fraud. Therefore, elements one, three, and four of the four-factor test for invoking collateral estoppel have been met.

### 2. Element Two: Full & Fair Trial

The parties dispute the validity of the previous conviction, as Hackett contends that he "was not afforded a full and fair trial in the criminal case." (ECF No. 234 at 15.) Specifically, Hackett contends that: the Government relied on circumstantial evidence of Hackett's matched trades in the jury trial; forensic evidence of trading was available and the "intentional non-disclosure" of this evidence "allowed the Government to mislead the jury, deceive the court in its Motions in Limine, and provide a false presentation of the facts at trial"; and that a jury must weigh this new evidence. *Id.* at 15–19. Additionally, Hackett has filed a notice of appeal of his criminal conviction to the Ninth Circuit (ECF No. 230-6) and a motion for new trial based on newly discovered evidence and prosecutorial misconduct (ECF No. 230-7). Both the appeal and motion for new trial remain pending.

Hackett's contentions are not relevant to the application of collateral estoppel. The doctrine of collateral estoppel exists for the purpose of preventing litigants from avoiding the preclusive effects of a lower court judgment by attempting to relitigate the issues decided in a prior case. *See, e.g.*, *Parklane Hosiery*, 439 U.S. at 326 n.5; *SEC v. Mogler*, No. CV-15-01814-PHX-SPL, 2020 WL 1065865, at *4 (D. Ariz. Mar. 5, 2020) (finding that even though the defendant filed a petition to vacate his sentence due to ineffective assistance of counsel, "it is well-settled that 'the preclusive effects of a lower court judgment simply cannot be suspended by taking an appeal that remains undecided'") (quoting *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993)) (citations omitted); *SEC v. Barama*, No. 19-CV-08207-RS, 2024 WL 3559721, at *2–3 (N.D. Cal. July 25, 2024) (holding that the defendant's argument "that his conviction in the criminal case was erroneous and will be reversed on appeal" did not preclude the application of collateral

10

estoppel in the civil trial).

For the purposes of collateral estoppel, the Criminal Case was fully and fairly litigated. Over the course of five days, Hackett, who was represented by counsel, took advantage of opportunities to cross-examine Government witnesses, object to questions, and present his own evidence. (ECF Nos. 230-92–230-109.) Hackett's contention that he was not afforded a full and fair trial because the Government in the Criminal Case relied only on circumstantial evidence and withheld exculpatory evidence is not persuasive. Circumstantial evidence is frequently utilized to support criminal convictions. *See Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1030 (9th Cir. 2006) (relying on Supreme Court precedent that "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence") (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 (2003)). Furthermore, "there is no rule… that an issue is not 'litigated' for the purpose of collateral estoppel simply because a party fails to present all of the evidence that it possesses or that it might have obtained in support of its case." *United States v. Castillo-Basa*, 483 F.3d 890, 898 (9th Cir. 2007); *see also Harris v. Washington*, 404 U.S. 55, 57 (1971) (finding that the exclusion of important inculpatory evidence did not mean a material issue had not been "fully litigated" under the principle of collateral estoppel).

Hackett does not request the Court postpone ruling in this case until his appeal is final or judgment is entered on the motion for new trial in the Criminal Case. If he had, the Court would have declined the request, as the Ninth Circuit has explained that "final judgment retains its collateral estoppel effect, if any, while pending appeal… the benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment." *Collins v. Horton*, 505 F.3d 874, 882–83 (9th Cir. 2007). If Hackett's criminal appeal is successful, "any judgment against him [in this action] would be set aside." *Reyes*, 2008 WL 3916247, at *5.

Therefore, there is no genuine dispute as to whether Hackett had a full and fair trial.

Hackett is collaterally estopped from relitigating the issues presented in the Criminal Case. Thus, it cannot be disputed that Hackett violated Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) promulgated thereunder.

## C. The Requested Remedies

The SEC "seeks disgorgement [of] $30,812 and $11,797.54 in prejudgment interest,"[5] "an injunction against violating Section 10(b) of the Exchange Act and Rules 10b-5 thereunder, and a penny stock bar." (ECF No. 229-1 at 26.) Hackett does not challenge the SEC's calculations of his liability in restitution nor the propriety of injunctive relief or the penny stock bar. (*See* ECF No. 234.) "A non-moving party's failure to respond to a claim in its opposition can constitute a concession of that claim." *Whiteslate, LLP v. Dahlin*, No. 20-CV-1782 W (BGS), 2021 WL 2826088, at *5 (S.D. Cal. July 7, 2021) (collecting cases). "Pursuant to local rules, '[t]he opposition must contain a brief and complete statement of all reasons in opposition to the position taken by the movant.'" *Id.* (quoting S.D. Cal. CivLR 7.1(f)(3)(b)). Hackett's failure to respond to the SEC's contentions regarding the requested remedies indicates that he has effectively waived any opposition to those claims. Nonetheless, the Court evaluates the merits of the requested remedies below.

### 1. *Disgorgement & Prejudgment Interest*

The SEC seeks an order of disgorgement of ill-gotten gains and prejudgment interest from Hackett. (ECF No. 229-1 at 26–27.) "The purpose of a disgorgement remedy is to prevent unjust enrichment and to make securities law violations unprofitable." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1097 (9th Cir. 2010). "When a defendant is found liable for securities violations, the Court has broad equitable power to order disgorgement of all gains, including prejudgment interest, flowing from that illegal activity." *SEC v. Heart Tronics, Inc.*, No. SACV111962JVSANX, 2015 WL 13343180, at

---

[5] The SEC has represented that the disgorgement and prejudgment interest are to be deemed satisfied by the order of restitution of $67,184.91 in the Criminal Case because the amount of criminal restitution is higher than the amount of disgorgement. (ECF No. 229-1 at 26 n.7.)

*8 (C.D. Cal. Feb. 18, 2015) (citations omitted), *aff'd sub nom. SEC v. Stein*, 906 F.3d 823 (9th Cir. 2018).

The SEC requests disgorgement of $42,609.54, which is the sum of $30,812 in illegal gain and $11,797.54 in prejudgment interest. The SEC "calculates disgorgement based on $30,812 in gross ASNT stock sales proceeds by Hackett." (ECF No. 229 at 26.) The SEC "calculates [$11,797.54 as the] prejudgment interest based on the rate of interest used by the Internal Revenue Service for the case." (ECF No. 230-114 at 2.) Hackett does not respond to the SEC's contentions on these points. (*See* ECF No. 234.) The Court finds disgorgement is appropriate and accepts that $42,609.54 is a reasonable approximation of Hackett's ill-gotten gains and the prejudgment interest. The SEC asserts, "[b]ecause the amount of criminal restitution is higher than the amount of disgorgement … the SEC will not seek to collect the awarded disgorgement." (ECF No. 229-1 at 26 n.7.)

### 2. Permanent Injunction

The SEC seeks a permanent injunction enjoining Hackett from violating Section 10(b) of the Exchange Act and Rules 10b-5 thereunder. (ECF No. 229-1 at 27.) Under Section 20(b) of the Securities Act and Section 21(d) of the Exchange Act, it is within the Court's discretion to issue a permanent injunction from future violations of securities laws against a defendant where there is a reasonable likelihood that violations may be repeated. 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d); *see also SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). Courts consider the following factors in determining whether injunctive relief is appropriate: "[T]he degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the likelihood, because of [the] defendant's professional occupation, that future violations might occur; and the sincerity of [the defendant's] assurances against future violations." *Heart Tronics*, 2015 WL 13343180, at *8.

Although Hackett contends that he did not violate Section 10(b) of the Exchange Act and Rules 10b-5 thereunder, by finding Hackett guilty, the jury found that he acted with

the requisite scienter. *See SEC v. Curative Biosciences, Inc.*, No. 8:18-CV-00925-SVW, 2020 WL 7345681, at *3 (C.D. Cal. Oct. 22, 2020) (finding scienter weighed in favor of granting the injunctive relief because the jury in a parallel criminal case had "implicitly found that [the defendants] acted with knowledge or recklessness"). Further, the evidence shows that Hackett made at least four outright misrepresentations to a transfer agent because they were necessary to complete the fraud. Lastly, Hackett has not recognized the wrongful nature of his conduct or given any assurances against future violations, as Hackett contends that he did not commit any crime. (*See, e.g.*, ECF No. 234.)

Weighing these factors, the Court finds a permanent injunction enjoining Hackett from violating Section 10(b) of the Exchange Act and Rules 10b-5 thereunder is warranted in this case.

### 3. Penny Stock Bar

The SEC seeks a penny stock bar against Hackett. "A court is authorized to bar an individual from trading in 'penny stock,' an equity security with a price of less than $5.00, when it is shown that the person was participating in an offering of penny stock at the time of the alleged misconduct." *SEC v. Fassari*, No. 8:21-CV-00403JVS(ADSX), 2022 WL 22792595, at *1 (C.D. Cal. Aug. 31, 2022) (citing 15 U.S.C. § 78u(d)(6)(A); 15 U.S.C. § 77t(g)). Courts consider the following factors when determining whether to implement the bar: "(1) the egregiousness of the underlying securities law violation; (2) the defendant's repeat offender status; (3) the defendant's role or position when he or she engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur." *Curative Biosciences*, 2020 WL 7345681, at *4 (citing *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1193 (9th Cir. 1998)). Courts generally place "great weight" on scienter in "deciding whether a penny stock bar is appropriate." *Fassari*, 2022 WL 22792595, at *3 (quoting *SEC v. All. Transcription Servs., Inc.*, No. CV08-1464-PHX-NVW, 2009 WL 5128565, at *10 (D. Ariz. Dec. 18, 2009)).

The SEC contends that "these factors weigh in favor of a penny stock bar" because: "Hackett's conduct was egregious," "his scienter level was high enough to warrant a criminal conviction," "he has not acknowledged any wrongdoing," and he will "likely return to penny stock trading unless he is barred from doing so." (ECF No. 229-1 at 28.) Hackett does not respond to these contentions. (*See* ECF No. 234.)

The Court finds that, taken together and placing "great weight" on Hackett's scienter, these factors weigh in favor of granting the requested penny stock bar. The Court grants the SEC's request to impose a penny stock bar against Hackett.

### V. CROSSCLAIMS

As previously discussed, on June 15, 2023, Hackett asserted crossclaims against Gillespie and Budhu. (ECF No. 144.) The docket reflects that Hackett has taken no action regarding the crossclaims since that time.

Pursuant to Local Civil Rule 41.1, "[a]ctions or proceedings which have been pending in this court for more than six months, without any proceeding or discovery having been taken therein during such period, may, after notice, be dismissed by the Court for want of prosecution, at the calling of a calendar prepared for that purpose by the Clerk." S.D. Cal. CivLR 41.1; *see also* Fed. R. Civ. P. 41(b).

In light of the Court's rulings in this Order and the Court's previous rulings in this case, Hackett shall show cause why the crossclaims should not also be dismissed without prejudice for failure to prosecute, and because there no longer appears to be a case or controversy with respect to the cross claims.

### VI. CONCLUSION

IT IS HEREBY ORDERED that the SEC's Motion for Summary Judgment as to Defendant Andrew Hackett (ECF No. 229) is granted.

No later than ten (10) days from the date this Order is entered, the SEC shall file—and email to chambers in Word format—a proposed judgment which conforms to the rulings in this Order. No later than ten (10) days thereafter, Hackett may file a response to the

1  proposed judgment.
2     IT IS FURTHER ORDERED that Hackett is ORDERED TO SHOW CAUSE as to why
3  his crossclaims should not be dismissed for failure to prosecute and because there no longer
4  appears to be a case or controversy with respect to the cross claims. Hackett shall respond
5  to this order to show cause within twenty-one (21) days from the date this Order is entered.
6  If Hackett does not respond, the Court will direct the Clerk of the Court to dismiss his
7  crosscalims against Gillespie and Budhu and close the case.

Dated: November 18, 2024

*[signature]*
Hon. William Q. Hayes
United States District Court